UNITED STEELWORKERS
OF AMERICA

v.

OVERLY MANUFACTURING
COMPANY.

Civ. A. No. 76–275.

United States District Court,
W. D. Pennsylvania.

Oct. 27, 1977.

 

Susan H. Bitensky, Frank J. Lucchino, Pittsburgh, Pa., for plaintiff.

Henry J. Wallace, Jr., Pittsburgh, Pa., for defendant.

## OPINION

### PLAINTIFFS' MOTION FOR ADJUDICATION OF CIVIL CONTEMPT

KNOX, District Judge.

There is presently before the court a motion filed by the plaintiff asking that the defendant employer be held in civil contempt for violation of previous orders of this court as affirmed by the United States Court of Appeals for the Third Circuit ordering enforcement of an award of an arbitrator determining a grievance with respect to alleged improper layoff of employee John Grabiak.

The controversy with respect to layoff of Grabiak as a draftsman in the employer's Greensburg, Pennsylvania plant was a subject of a grievance filed upon which hearings were held and award entered October 16, 1975 by arbitrator Thomas J. McDermott. The arbitrator sustained the position of the plaintiff union and entered an award as follows:

> "It is my award that the company was in violation of Section 13.2 when on April 25, 1975, it laid off the senior Draftsman, Mr. Grabiak, and it retained the junior one, Mr. Wright. Mr. Grabiak shall be reinstated to the job of Draftsman with his full seniority and he shall be reimbursed for all wages and benefits lost at regular rates less any compensation received or earned during the period from April 25, 1975, to the date of his reinstatement."

The company failed to comply with this award and the plaintiff union filed a motion to enforce the award and the company filed a petition to vacate the same. The cases were assigned to the late Judge Gourley of this court who on August 5, 1976, granted the motion of the plaintiff union for summary judgment and further provided:

"IT IS FURTHER ORDERED AND DE-CREED that the award of Thomas J. McDermott, Arbitrator, issued on October 16, 1975 in favor of the grievant, Mr. Grabiak and against the Overly Manufacturing Company is to be enforced.

"IT IS FURTHER ORDERED AND DE-CREED that the petition by the Overly Manufacturing Company to vacate same award hereinabove referred to is dismissed."

The company thereupon appealed and the Court of Appeals on May 9, 1977 entered a judgment order affirming the judgment of the district court. Certificate in lieu of mandate was issued June 1, 1977.

The company still failed to comply and on June 27, 1977, the union filed a motion for adjudication of civil contempt. The matter was set down for argument before this court and after argument the court entered an evidentiary hearing with respect to the matters in dispute which hearing was held September 5, 1977.

It appeared that there are two matters in controversy with respect to enforcement of the award: (1) the amount of back pay due Grabiak under the terms of the award and (2) Grabiak's right to reinstatement in view of the company's claim as a result of change in its business operations his job no longer exists at the Greensburg plant, that the operations which he formerly performed have been transferred to their plant in California, that he has been offered a job as draftsman at Glendale, California and has refused to accept the same insisting upon his right to be reinstated as a draftsman at the Greensburg, Pennsylvania plant.

On September 15, 1977, following the evidentiary hearing the court ordered the defendant to compute and file within 7 days a statement of the amount due Grabiak to and including the date of the decision of the United States Court of Appeals for the Third Circuit on May 9, 1977, which claim for back pay was to be referred to a magistrate.

The employer did file a statement of its position as to the amount due under the back pay aspect of the award and it appeared thereupon that there was a dispute as to the amounts due and the amounts to be allowed as credit for earnings received by Grabiak and other employment. Therefore, on September 29, 1977, the matter of determination of back pay was referred to a magistrate to determine the amount of judgment to be entered against the defendant if any. The magistrate was directed to compute the amount due to June 1, 1977, the date of receipt of mandate from the United States Court of Appeals and secondly to the date of the magistrate's report. It was further ordered that the question of reinstatement was taken under advisement by the court considering the company's claim of impossibility of compliance and changed circumstances as justifying failure to comply with the award and the orders of the courts.

From the testimony taken, it appears that Grabiak had been laid off April 25, 1975, which layoff was held to be improper by the award of the arbitrator. On July 13, 1977, following the affirmance by the Court of Appeals, Grabiak was offered a job as welder in the maintenance department, since the company took the position that there was no work available for him as a draftsman or detailman. It appears that as a welder he is earning $5.10 to $5.50 per hour or approximately $850 per month. As a draftsman he was earning $780. While Grabiak demanded reinstatement in his old job of draftsman, nevertheless, in furtherance of a compromise worked out between the union and his employer he accepted the job of welder pending determination of the dispute.

A further complicating factor is that on September 16, 1977, an election was held under the direction of the National Labor Relations Board at which by a vote of 22 to 4 the office, clerical and technical employees including draftsmen employed at the Greensburg plant expressed a desire not to be represented for collective bargaining by plaintiff United Steelworkers of America. A certificate dated September 26, 1977, is signed by the Regional Director of the NLRB and states "that no collective bar-

gaining representative has been selected; and no objections having been filed to the tally of ballots furnished to the parties or to the conduct of the election within the time provided therefor" it was therefore certified that a majority of ballots had not been cast for any labor organization appearing on the ballot and that no such organization is the exclusive representative of all the employees in the unit involved within the meaning of Section 9(a) of the National Labor Relations Act.

The contract under which the award of the arbitrator was added was dated February 2, 1974 and expired pursuant to its terms on October 1, 1977 and there is thus at this time no Collective Bargaining Agreement in effect with respect to these employees at the Greensburg plant and plaintiff no longer has any standing as a collective bargaining representative with respect to the job in question.

In explanation of its failure to comply with the award and orders of the court the defendant produced evidence which the court finds to be true that previously its business at Greensburg consisted of the manufacture of light gauge metal doors such as are used in houses and office buildings for the design of which the draftsmen including Grabiak were employed. Beginning in 1971 however a transformation of the business at Greensburg began and has since been completed whereby the manufacture of light doors has been transferred to its facilities at Glendale, California and the Greensburg plant is presently engaged only in the production of what is known as "severe doors". These are doors which are extremely heavy and are designed by engineers for use in nuclear power plants and other places to prevent the spread of fire, floods, endure earthquakes and explosions and in other words be capable of withstanding severe blasts and other pressures of that nature. The testimony shows that such doors can only be designed by professional engineers who are college graduates and their design involves the use of higher mathematics. Grabiak admits he has only a high school education and no formal drafting education.

At the present time there are no draftsmen as such remaining at the Greensburg, Pennsylvania plant. The evidence further shows that the company did offer to transfer Grabiak to California where they would place him as a draftsman at his old job on light doors such as are manufactured presently in California and offered to pay his expenses. This offer was refused.

■ The defendant has asked that the full matter be referred back to the arbitrator for decision. The court deems this unnecessary. While the exact amount of back pay which may be due Grabiak for his wrongful layoff and refusal to rehire him does depend upon certain facts which will have to be developed before the magistrate, the court does not consider the award as enforced by the courts as so lacking in specificity as to be unenforceable. It clearly states that "Grabiak shall be reimbursed for all wages and benefits lost at regular rates less any compensation received or earned during the period from April 25, 1975 to the date of his reinstatement. This does involve a calculation which we have entrusted to the magistrate of the amounts due at regular rates for the period from April 25, 1975 forward, a calculation of the amount of benefits lost and a determination of what if any compensation he has received or earned at other jobs during this period. This is clearly a case for application of the maxim "Id Certum Est Quod Certum Reddi Potest". Upon receipt of the magistrate's report and consideration of any objections thereto the court will be in a position to make a final order with respect to enforcement of back pay in a specific amount.

■ The determination of Grabiak's right to reinstatement is not however simple. There is no question that the award required that Grabiak be reinstated to his job of draftsman with full seniority and this was the order which was enforced by order of this court and of the Court of Appeals. Now, after the case has been pending for over two years, the employer having lost before the arbitrator in this court and in

the Court of Appeals comes forward with the defense of impossibility of performance. There is no question of course that we are not at this time going to relitigate the underlying controversy and that the award and orders of this court and of the Court of Appeals are not open to reconsideration. See *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948) where impossibility of performance was recognized with respect to a turn over order issued by a referee in bankruptcy and it appeared that the subject matter of the turn over order had disappeared and the property no longer could be turned over. The court quoted the Circuit as saying: "Although we know that Maggio cannot comply with the order, we must keep a straight face and pretend that he can, and must thus affirm orders which first direct Maggio to do an impossibility, and then punish him for refusal to perform it." The Supreme Court held that this is not a correct statement of the law, that the court always reserves the right to modify an order for impossibility. The court said: "It would be a disservice to the law if we were to depart from the long standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." The court then went on to hold that where compliance with the original order is impossible and held that "the trial court is obliged to weigh not merely the two facts that a turn over order has issued and that it has not been obeyed, but all the evidence properly before it in the contempt proceeding in determining whether or not there is actually a present ability to comply and whether failure so to do constitutes deliberate defiance which a jail term will break."

For this reason it has been held that where change of circumstances whether of law or fact have occurred, they may call for a modification of the court decree. In *System Federation No. 91 v. Wright*, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), the court clearly held that in such circumstances the decree may be modified. The court said:

"There is also no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen. The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief. Firmness and stability must no doubt be attributed to continuing injunctive relief based on adjudicated facts and law, and neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided. Nevertheless, the court cannot be required to disregard significant changes in law or facts if it is 'satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong.'"

More recently the question of change of decree because of changed rules of law was recognized by our Court of Appeals in *Jordan v. Erie School District*, 548 F.2d 117 (3d Cir. 1976).

Again, in *National Resources Defense Council Inc. v. Train*, 166 U.S.App.D.C. 312, 510 F.2d 692 (1975) the court also recognized that an equity court has discretion in enforcing its decree where there is impossibility of performance. The court said: "The sound discretion of an equity court does not embrace enforcement through contempt of a party's duty to comply with an order that calls him to do an impossibility."

This court does hold that there has now been a change of business conditions and circumstances which renders literal enforcement of the reinstatement of Grabiak to his former position which no longer exists as an impossibility and change of circumstances which would render literal enforcement of the reinstatement decree inequitable.

In *Union Drawn Steel Co. v. NLRB*, 109 F.2d 587 (C.C.A.3d 1940) an unfair labor

practice case, our Court of Appeals held that the Board could not order reinstatement without a finding that there is work for the employee to do. It was pointed out that an employer may go out of business or decrease production as he sees fit and cannot be required to reinstate under such circumstances. Again, in *NLRB v. Federal Bearings Co. Inc.,* 109 F.2d 945 (C.C.A.2d 1940) it was held that where depressed business conditions had caused layoffs an employer was not in contempt by failure to reinstate.

In *NLRB v. Wilson Line,* 122 F.2d 809 (C.C.A.3d 1941) our Court of Appeals again held that a company cannot be required to reinstate employees for whom there is no work as a result of curtailment of operations. More recently in *NLRB v. Southeastern Pipe Line Co.,* 210 F.2d 643 (5th Cir. 1954) it was held that where the employee did not have the knowledge required for a new position created by combining two former jobs and had been given a transfer to another location at the same pay, reinstatement should not be ordered.

The absurdity of ordering reinstatement under these circumstances is well stated by the defendant in its brief wherein the question is raised that to order reinstatement in this case would merely result in feather bedding, compelling reinstatement of a man to a job which no longer exists and giving him an apparent life time job to sit at the Greensburg plant and do nothing, since the court finds it is obvious he cannot do drafting work and design work upon the severe pressure doors now manufactured at Greensburg.

■ The court has been greatly troubled however by the fact that this matter was not raised before the arbitrator or before this court or in the Court of Appeals while this litigation was proceeding. It appears however that the final shutdown of the Greensburg light door operation and transfer of the manufacture of this item to California was not completed until 1976 when the number of draftsmen employed was reduced to zero. This however does not excuse the defendant from not bringing this matter to the attention of the court before the mandate issued from the Court of Appeals. We will therefore hold that the defense of changed circumstances to the application for reinstatement could not possibly be effective prior to June 1, 1977 the date of issuance of that mandate and we will therefore instruct the magistrate that back pay shall only be awarded to that date of June 1, 1977.

■ We further agree with the defendant that in view of the expiration of the contract under which the award was entered on October 1, 1977, and the decertification of the plaintiff as a collective bargaining agent for Grabiak and other draftsmen and clerical employees at the Greensburg plant that the controversy with respect to reinstatement is now moot and that there is no possibility of reinstatement because no new agreement has been executed. In the absence of an agreement it would appear that Grabiak was only an employee at will under Pennsylvania law and would therefore be subject to discharge when the agreement expired on October 1, 1977. See *General Electric Co. v. Local 191,* 443 F.2d 608 (2d Cir. 1971). The fact that there may be mootness as to some issues does not make others moot and this therefore leaves the issue of back pay for determination. *Kentucky West Virginia Gas Co. v. Oil Chemical and Atomic Workers,* 549 F.2d 407 (6th Cir. 1977).

We will therefore enter an appropriate order refusing the petition for contempt with respect to the reinstatement of the employee Grabiak on and after June 1, 1977, but continue the reference to the magistrate under the order of September 29, 1977 in effect with instructions only to compute the amount of back pay due to June 1, 1977.

This opinion contains the findings of fact required by Rule 52(a).