447 F.Supp. 439 (1978)
MISCELLANEOUS DRIVERS AND HELPERS LOCAL UNION NO. 610, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a labor organization, Plaintiff,
v.
VDA MOVING & STORAGE, INC., Defendant.
No. 77-415C(3).
United States District Court, E. D. Missouri, E. D.
March 27, 1978.
*440 Richard D. Mills, Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., for plaintiff.
Donald J. Meyer, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Miscellaneous Drivers and Helpers, Local Union No. 610, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America brought this action pursuant to 29 U.S.C. § 185, seeking to enforce arbitration awards against defendant VDA Moving & Storage, Inc.
This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1) Plaintiff Miscellaneous Drivers and Helpers, Local Union No. 610, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America [hereinafter "union"] is a voluntary unincorporated association and is a labor organization within the meaning of 29 U.S.C. §§ 142, 152, 162 and 185. Defendant VDA Moving & Storage, Inc. is a corporation organized and existing pursuant to law and is an employer within the meaning of 29 U.S.C. §§ 142, 152, and 185.
2) Plaintiff and defendant had entered into a collective bargaining agreement for the period commencing on March 1, 1973 and terminating on February 28, 1976. The agreement provides in part:
This Agreement shall become effective as of the first day of March, 1973 and shall remain in full force and effect until the 28th day of February, 1976, and each year thereafter, unless written notice of termination or desired modification is given at least sixty (60) days prior to any yearly expiration date by either of the parties hereto.
Should notice of termination or desired modification be given in the manner provided for above, the party desiring the same shall:
. . . . .

*441 3. Continue in full force and effect, without resorting to strike or lock-out, all terms and conditions of this agreement for a period of sixty (60) days after such notice is given or until the expiration date of this contract, whichever occurs later. In the process of bargaining in good faith for a new contract or a contract containing the desired modifications, the parties recognize the fact that it may be necessary to continue their negotiations after the date upon which this agreement legally terminates and in order to provide for their duties and obligations for the period of time between the termination date of this contract and the date upon which they conclude a new contract or one containing the desired modifications, it is understood and agreed as follows:
1. The parties shall continue to bargain and negotiate in good faith in an effort to reach a complete agreement and understanding covering the terms and provisions of a new contract to take the place of this one or a contract containing the desired modifications, and such negotiations shall continue until either a complete agreement and understanding is reached or until either or both parties conclude that it is not probable that further negotiations will result in agreement.
2. All of the terms and provisions of this contract shall be continued in full force and effect and extended from the termination date hereof, to such time as the parties either enter into a new agreement or agreement containing the desired modifications, or terminate further negotiations in the manner above mentioned.
3) Upon expiration of the contract on February 28, 1976, the parties entered into negotiations and met from February through June, 1976. There were also contract meetings as late as October, 1976 with some indications of meetings even later in 1976.
4) On August 10, 1976, Otto Faerber, a personnel consultant for defendant, sent a letter to Glen Boyer, Business Representative for plaintiff union, stating in part:
On June 25, 1976, Friday, I submitted a counter-proposal to your proposal. At that time you indicated that there would be a response from the union. To this date, I have heard nothing further. So, for a period of well over seven weeks, there has been no attempt, by the union, to negotiate a labor agreement for the employees at VDA Moving & Storage, Inc.
On that basis we have concluded that the union is not interested in negotiating a contract with this company and have further concluded that it is not probable that future negotiations will result in agreement.
For this reason, I am advising VDA Moving & Storage, Inc., to discontinue any practices which may have been felt to be necessary under the operation of the old labor agreement, which include payments to Central States Southeast and Southwest Areas Health & Welfare, and Pension Fund, deduction of union dues, and the like.
. . . . .
We trust that the above makes the company's position clear but if there are any questions or if you think any further discussion would be of value, I would be glad to meet with you.
5) On October 22, 1976, Mr. Faerber sent a letter to Glen Boyer stating:
Attached, in 3 copies, and working from the contract which is provided for termination on 2-28-76, is a list of the concessions from which you may choose those items that would offset the cost of the 15¢ per hour increases, (totalling 45¢ if an agreement is reached expiring on 2-28-1979).
There are several non-monetary items in which we have a strong feeling.
I will expect to hear from you and resume negotiations about Nov. 8th, 1976.
6) Payments were made by defendant to plaintiff Union for health and welfare benefits through December, 1976.
7) To date no new agreement has been reached between the parties.
*442 8) On July 14, 1976, Harry L. Alder, an employee of defendant, filed a grievance. On July 28, 1976, Carl S. Jackson, Jr., Robert Spencer, Ulyssess Halls, and Norval Harris, employees of defendant, filed grievances.
9) These grievances were submitted to arbitration. A hearing was held on November 22, 1976 before Raymond R. Roberts. On December 7, 1976, Mr. Roberts issued his decisions upholding the grievances. With reference to Mr. Alder's grievance, Mr. Roberts stated:
For the reasons stated, the grievance is sustained. The Company is directed to reinstate Grievant with full seniority and, conditional upon Grievant's disclosure of other earnings, full backpay in accordance with the foregoing discussions from the date of Grievant's discharge until the date established by the Company as the date the parent company hired a new long distance driver next after the offer made by the parent company's safety man to Grievant for such employment, or absent proof of such date, until the date of reinstatement. The arbitrator retains jurisdiction to assist the parties in administering the back pay award.
With reference to the grievances of Mr. Jackson, Mr. Spencer, Mr. Hall, and Mr. Harris, the arbitrator stated:
For the reasons stated, the grievances are sustained. The Company is directed to pay Grievants backpay at their regular hourly straight time pay for their normal work schedule from July 28, 1976 until the Grievants are recalled from layoff, less any hours that Grievants were actually recalled for work by the Company or afforded the opportunity to work on recall by the Company. The Company shall also be credited with any earnings or income received by the Grievants for unemployment compensation or employment which they would have held but for layoff. The Grievants are directed to make full disclosure of all such income to the Company. The Company is directed to recall the Grievants in accordance with the contract for lack of work, provided such work is not being performed by Harig Moving & Storage. The arbitrator retains jurisdiction to assist the parties in administering the backpay portion of this award in the event they are unable to do so.
10) Defendant did not raise the issue of the contract's expiration at the time of arbitration. The post-hearing memorandum filed by defendant with the arbitrator does not raise the issue and in fact states:
This proceeding was instituted under the provisions of the Agreement between VDA Moving & Storage, Inc. and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 610, effective from March 1, 1973, to February 28, 1976, and continued after that date "each year thereafter" under Article XXV.
11) Defendant has failed and refused to abide by the arbitration awards, although demanded to do so by the Union.
12) From the evidence adduced, this Court finds that the contract between the parties did not terminate until December, 1976. Although defendant purported to terminate the agreement on August 10, 1976, it continued to negotiate with plaintiff and continued making health and welfare contributions until December, 1976.

CONCLUSIONS OF LAW
This Court has jurisdiction of the subject matter and the parties to this suit in accordance with 29 U.S.C. § 185.
The sole issue raised herein is the enforceability of the arbitration awards. Defendant contends that the awards were not enforceable because the contract had expired at the time that the arbitrator heard the evidence and rendered his decision. Defendant does not contend that the contract had expired at the time of the actions giving rise to the grievances. Instead, defendant argues that the contract terminated as of August 10, 1976. The Court has found that the contract did not terminate as of that date. Although defendant's representative did send the Union *443 a letter on that date purportedly terminating the contract, the parties continued to meet in an attempt to negotiate a new agreement; thus, under the terms of the agreement, there was no termination.
The Court concludes that the arbitration awards were valid even assuming the expiration of the contract. In Ficek v. Southern Pacific Company, 338 F.2d 655 (9th Cir. 1964), the court noted that "an agreement to arbitrate a particular issue need not be express  it may be implied from the conduct of the parties." Id. at 656. Thus, even assuming that arbitration was not required because the contract had expired, the actions of defendant company in proceeding to arbitrate and in failing to raise the issue of the arbitrator's jurisdiction, indicate a consent to arbitrate.
More importantly, in Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 248, 97 S.Ct. 1067, 1072, 51 L.Ed.2d 300 (1977), the Court stated:
Our prior decisions have indeed held that the arbitration duty is a creature of the collective-bargaining agreement and that a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so. Adherence to these principles, however, does not require us to hold that termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract. Carried to its logical conclusion that argument would preclude the entry of a post-contract arbitration order when even the dispute arose during the life of the contract but arbitration proceedings had not begun before termination .. Yet it could not seriously be contended ... that the expiration of the contract would terminate the parties' contractual obligations to resolve such a dispute in an arbitral, rather than judicial forum.
Accordingly, the Court concludes that these grievances were properly submitted to arbitration and that the awards should be enforced.
Because no contract was ever reached between the parties, and the Court has found that the contract was terminated as of December, 1976, the issue arises as to the enforceability of the awards beyond the date of contract expiration. In United Steelworkers of America v. Overly Manufacturing Co., 438 F.Supp. 922 (W.D.Pa. 1977), the court stated:
... in view of the expiration of the contract under which the award was entered on October 1, 1977, and the decertification of the plaintiff as a collective bargaining agent for Grabiak and other draftsmen and clerical employees at the Greensburg plant ... the controversy with respect to reinstatement is now moot and ... there is no possibility of reinstatement because no new agreement has been executed. In the absence of an agreement it would appear that Grabiak was only an employee at will under Pennsylvania law and would therefore be subject to discharge when the agreement expired on October 1, 1977. Id. at 927.
In accordance with the reasoning therein, and in view of the Court's finding that the contract between the parties expired in December, 1976, the Court concludes that the backpay provisions of the award should be enforced from the date set forth in the awards through December 31, 1976. Since that date has since passed, reinstatement is mooted.
Plaintiff has requested an award of attorney's fees. No evidence was adduced on this point. The general rule, however, is that attorney's fees are not recoverable and the Court declines to award them herein. Kellogg Co. v. International Printing Pressmen and Associates Union of North America, AFL-CIO, 410 F.Supp. 207 (W.D.Mich. 1976).
Appropriate orders will issue.