UNITED STEELWORKERS OF AMERICA, LOCAL NO. 12886, Plaintiff,

v.

ICI AMERICAS INC., ATLAS POINT PLANT, Defendant.

Civ. A. No. 81–524.

United States District Court, D. Delaware.

July 2, 1982.

---

Melvyn I. Monzack, of Walsh & Monzack, P. A., Wilmington, Del., for plaintiff.

O. Francis Biondi and Donald E. Reid, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant.

## OPINION

STEEL, Senior District Judge:

The present action was brought by plaintiff, United Steelworkers of America, Loc. No. 12886, against the defendant, ICI Americas, Inc. Atlas Point Plant, to enforce an arbitration award under Article X, Section 1 of a Collective Bargaining Agreement between defendant and plaintiff.

The answer and counterclaim of the defendant alleges that the award is unenforceable since the award is either ambiguous or if interpreted as the Union suggests, beyond the scope of the authority of the Arbitrator and hence it should be remanded to the Arbitrator for clarification. The Union in responding to the counterclaim has denied that the award is either ambiguous or beyond the scope of the Arbitrator's authority.

* These are the grievances which the Arbitrator dealt with although there were others claimed

The parties have filed cross motions for summary judgment and have agreed that no genuine controversy exists as to any material fact.

The arbitration resulted from the following facts:

On October 19, 1978, the parties entered into the Collective Bargaining Agreement which was effective from October 18, 1978 to October 17, 1980. The Agreement is contained in the Appendix (Doc. 12) as A–3 through A–45.

On January 30, 1980, consistent with traditional practice, see p. 7 of Arbitrator's award at A–53, the defendant issued a notice captioned "Vacation Shutdown." This notice provided for a vacation and repair shutdown for all operations for the weeks of July 21 and 28, 1980. On July 3, 1980, the company posted a Revised Vacation Shutdown notice the effect of which was to extend the original shutdown period for an additional two weeks, i.e., August 4 and 11.

Following the posting of the revised shutdown schedule plaintiff filed a grievance which comprised several points: (1) the company was attempting to characterize the shutdown of the weeks August 4 and 11 as a "vacation" shutdown under Article VII, when, in fact, the shutdown amounted to a "temporary shutdown" as defined in Article VIII, § 19; (2) less than sixty days notice of an extension applicable to a shutdown for "vacation and repairs" was given by the company as required by Article VII § 4B.*

The parties exhausted the grievance procedures enumerated in Steps 2 and 3 of Section 1, Article X of the Agreement and proceeded to Step 4. Article X, Section 1, Step 4 provides for the submission of unresolved disputes under the Agreement to the American Arbitration Association. Article X, Section 1, Step 4 provides that a decision rendered pursuant thereto shall be final and binding on the parties.

by the Union.

Following selection by the parties, Arbitrator John Paul Simpkins held a hearing in New Castle County, Delaware on May 5, 1981, at which time the parties had the opportunity to present evidence in support of their respective positions.

On August 17, 1981, the Arbitrator issued his decision and award. In the decision he found that the revised shutdown was not for "vacation and repairs" and hence not a vacation shutdown within the purview of Article VII, Section 4B. Instead he held that the revised shutdown was in fact motivated solely by business considerations, i.e., high inventory and reduced customer demand and hence amounted to a "temporary shutdown" within the contemplation of Article VIII §§ 19 and 20. Moreover, he found that the extension of the alleged vacation had not been given sixty days notice as Article VII § 4B required.

Accordingly the Arbitrator made the following award:

## AWARD

1. The grievance is sustained.
2. The Company shall refrain from violations to the Agreement of this sort in the future.
3. The Company shall grant compensatory time to employees affected by the extended shutdown to the same extent they were individually affected.
4. The Company shall not be required to consider the seniority rights of employees in the determination of compensatory time credits.
5. The Company may, at its discretion, extend for a period of three years the employee's right to use compensatory time credits.
6. Unless the Company has prevented an employee's use of compensatory time, it shall not be required to compensate an employee in cash for his/her failure to use it within three years.
7. The Company shall not be required or obligated to purchase compensatory time from employees.

Stated in general terms, the guidelines are settled for remanding an award to the arbitrator for clarification. Where the true intent of an arbitrator is apparent, the award should not be resolved by resubmission to the arbitrator. Ordinarily ambiguities and inconsistencies in an arbitrator's award, however, should be resolved by resubmission to the arbitrator. *American Bakery & Confectionery Workers v. National Biscuit Co.*, 378 F.2d 918, 926 (3d Cir. 1967). The courts have uniformly refused to enforce arbitration awards which are incomplete, ambiguous or contradictory and instead have remanded such awards to the arbitrator for clarification. *United Mine Workers of America, District 5 v. Consolidation Coal Company*, 666 F.2d 806, 810 (3d Cir. 1981); *United Mine Workers of America, Dist. No. 2 v. Barnes & Tucker*, 561 F.2d 1093, 1097–98 (3d Cir. 1977). An ambiguous award must be remanded to the arbitrator for clarification because a failure to do so would amount to a preemption of the fact finding function assigned to the arbitrator. *Hart v. Overseas National Airways*, 541 F.2d 386, 392 (3d Cir. 1976).

The Union argues erroneously that *United States Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) holds that an award should be enforced even though it is ambiguous. It holds only that the Court should not interpret a Collective Bargaining Agreement at variance with an interpretation placed upon it by an arbitrator even though the opinion is ambiguous. The Court noted, however, that amounts due employees had not been fixed by the arbitrator and that he would have to do this, presumably by a remand.

The essence test referred to in *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969) is of no help to the Court in determining what the arbitrator meant when he used the term "compensatory time" in the award. The Union argues that to interpret the award as requiring vacation time without pay, as the Company contends, would be anomalous.

The anomaly is based upon the assertion by the Union that the interpretation urged by the Company would mean that union members, although successful in establishing that the Company had violated the Collective Bargaining Agreement, would be penalized just as if disciplinary action had been taken against them. This argument is not persuasive. It assumes erroneously that giving an employee the right to time off without pay at such time as he elects is equivalent to suspending him as a disciplinary measure and thereby requiring him to take time off without pay when the required action is deemed necessary by the Company. The difference is apparent.

Furthermore, while compensatory time in some contexts may mean time with pay, it does not necessarily mean this under the Arbitrator's award. The award of compensatory time was made to employees affected "to the same extent that they were individually affected." No employee was affected by the loss of pay during the time he took off during the "extended vacation" period. (Aff. Landmesser, ¶ 7, Doc. 13).

The award may readily be construed to require that the Company give employees proper vacation time to compensate them for the "vacation" of which they were deprived when the Company, as the Arbitrator found, actually was temporarily shut down under Article VIII § 19 of the Agreement. The employees who took time off during the abortive extended vacation, however, were paid. They would not have been if the time they had taken off had been treated as having occurred during a temporary shutdown as the Arbitrator held it should have been. The award can readily be interpreted as having given employees compensatory time for vacation which they were entitled to but were deprived of, but not compensatory pay which they received and were not deprived of.

The Arbitrator may well have conceived the "compensatory time" award to be in the nature of a compromise award. He found that the management of the Company misconceived its right to provide the extension of the vacation period but in so doing had not acted in a "calculated attempt to deliberately deprive employees of corresponding contractual rights." (A. 62). In short, believing as he did that the breach of the Collective Bargaining Agreement by the Company had been the result of action mistakenly taken in good faith, the Arbitrator conceivably felt that a compromise award giving employees additional vacation time off but without pay was equitable.

Other provisions of the award suggest that the Arbitrator may have had in mind compensatory time without pay. Thus paragraphs 4 and 5 speak of "compensatory time credits." Paragraph 6 states that in the absence of the fault of the Company, it shall not be obligated to pay an employee in cash for his failure to use his compensatory time. The Union's interpretation that the award of compensatory time required a cash payment if an employee took time off but not if he failed to take time off, would lead to an incongruous result. Under this interpretation he would be entitled to receive more pay if he took time off (regular pay plus vacation pay) than he would if he stayed on the job. (No vacation pay). Paragraph 7 also suggests that "compensatory time" was not viewed by the Arbitrator as having a monetary value.

■ What has been said demonstrates that the meaning of compensatory time in the award is patently ambiguous. Only the Arbitrator can conclusively say what it means. The Court cannot legally attempt to make that determination. The award should be remanded to the Arbitrator for clarification.