AUTOMOTIVE, PETROLEUM AND ALLIED INDUSTRIES EMPLOYEES UNION, LOCAL 618, Plaintiff,

v.

SEARS, ROEBUCK AND CO., Defendant.

No. 83–783C(1).

United States District Court, E.D. Missouri, E.D.

March 13, 1984.

Wiley, Craig, Armbruster, Wilburn & Mills, Fred A. Ricks, Jr., St. Louis, Mo., for plaintiff.

Dennis C. Donnelly, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., Robin S. Rothschild, Skokie, Ill., for defendant.

## MEMORANDUM

NANGLE, Chief Judge.

This case is now before this Court on plaintiff's motion for summary judgment or, in the alternative, to remand this case to the arbitration board for clarification of the arbitrator's award. Defendant also moved for summary judgment or to dismiss plaintiff's complaint. Because it is the opinion of this Court that the arbitration award in question is patently ambiguous and that remand is not necessary, this Court grants plaintiff's motion for summary judgment and denies defendant's motions.

### I. FACTS:

Plaintiff's cause of action arises out of an arbitration award entered by Impartial Arbitrator Raymond Roberts on a grievance filed by David Timmerman, an employee of defendant who is represented by plaintiff. The essential facts in this case are not in dispute. Pursuant to a collective bargaining contract between plaintiff and defendant, which covered the period from August 1, 1979, to August 1, 1982, David Timmerman filed a grievance on March 15, 1982, complaining of his discharge on March 12, 1982, from the job of automotive salesperson at defendant's St. Ann, Missouri, store. Article 10 of the contract prescribed a mandatory grievance procedure culminating in arbitration by an arbitration board consisting of one company, one union, and one impartial member. The contract provided that a decision of this "Arbitration Board" "shall be final and binding on both parties." Article 10, Step 4, ¶ 2. The contract further provided that:

[t]he Arbitrator shall have the power to compensate the parties or employes (sic) covered by this Agreement for damages shown to have resulted from a misinterpretation or breach of this Agreement but shall have no power to award exemplary or punitive damages.

Article 10, Step 4, ¶ 3.

David Timmerman was employed by defendant as an Automotive Sales Person. In this position he worked on the sales floor and sold automotive carry out tires, auto parts and accessories. *In re Timmerman* at 4. According to the written decision of the Arbitration Board, David Timmerman was "paid, in addition to a *base hourly rate,* a 3% commission on sales which" he made. *Id.* (emphasis added) The merits of David Timmerman's grievance are not important to the dispute herein, but by way of background David Timmerman was discharged for his alleged refusal to remove a charge for a particular automotive service from the sales ticket for a set of tires. *See id.* at 4–17. David Timmerman grieved his discharge through the mandatory grievance procedure and took it to an Arbitration Board, with Raymond Roberts acting as the impartial member, on September 1, 1982. Arbitrator Roberts drafted a decision and award on the grievance and sent a copy to both the union and the company representative for their consideration on December 2, 1982. The Arbitration Board met by means of a telephone conference call on January 4, 1983, and thereafter the award became final.

The award of the Arbitration Board found in favor of David Timmerman, called for his reinstatement as of July 12, 1982, and provided for back pay and appropriate fringe benefits for the period from July 12, 1982, to the date of his actual reinstatement. The specific meaning of the language of the award is in dispute. The relevant portions of the award provided as follows:

The prayer for back pay and any appropriate fringe benefits is sustained between July 12, 1982 and the date of

Grievant's actual reinstatement, hereinafter called "back pay period", which period shall be reduced by any period when Grievant would have been laid off but for his termination as aforesaid. *Back pay shall be at Grievant's regular straight time hourly rate* for the time he would have actually been scheduled according to his regular schedule, seniority and classification.

... Provided further, that if by reason of this Award Grievant should be required to repay any sum for which the Company was credited, including unemployment compensation, *the Company shall make him whole by such amount.* Provided further, that if Grievant shall again become eligible for any benefit for which the Company received a credit, including unemployment compensation, but the amount of that benefit shall be reduced by reason of the amount credited to the Company for the back pay period only, *the Company shall make Grievant whole for the difference in the benefit* which Grievant would have been entitled but for his discharge and the credit afforded the Company, for the back pay period only, and the amount which Grievant actually receives, in no event to exceed the credit given the Company against gross back pay.

... Reinstatement or payment, whether to Grievant or on his behalf, of all applicable fringe benefits shall also be limited to the back pay period provided, however, that if Grievant shall have sustained any loss or expense by reason of the loss of the fringe benefits during the back pay period, such as medical expenses which would have been covered by health insurance provided by the Company, *the Company shall make him whole for such losses.*

*In re Timmerman* at 34–36 (emphasis added).

Defendant did not, and does not here, contest the result of the Arbitration Board. David Timmerman was reinstated on January 24, 1983. Thereafter, the Company paid him back pay for the period July 12, 1982, through January 24, 1983. The amount of back pay was calculated by using David Timmerman's base hourly rate of pay, which was $7.00/hour. Plaintiff, however, claimed that David Timmerman's back pay should be calculated by using what it called his "benefit rate of pay", which it claimed was $13.67/hour. According to plaintiff, this benefit rate of pay is reflected in defendant's records. It is a calculation, made on a quarterly basis, of the average hourly commission sales of its commission salespeople. A document submitted by defendant in response to plaintiff's request to produce indicates that David Timmerman's benefit rate of pay was $6.67/hour on March 27, 1982. Thus, plaintiff argues that $13.67/hour is a more accurate reflection of David Timmerman's average rate of pay.

Plaintiff brought this action, under § 301 of the Labor Management Relations Act of 1947 (LMRA), as amended, 29 U.S.C. § 185, seeking an order directing defendant to comply with the decision of the Arbitration Award. Specifically, plaintiff seeks an order requiring defendant to calculate David Timmerman's back pay utilizing an hourly rate of $13.67. Plaintiff's complaint alleges that the Arbitration Award required defendant to "make [David Timmerman] whole for back pay and appropriate fringe benefits ...." *Plaintiff's Complaint* ¶ 11. By not paying David Timmerman at a rate of $13.67/hour, plaintiff's allege, defendant failed to make David Timmerman "whole" for the period in question and thereby failed to comply with the Arbitration Award.

Subsequent to filing its complaint, plaintiff took the deposition of Impartial Arbitrator Raymond Roberts. At that deposition, Arbitrator Roberts was asked a number of questions, over defendant's objections, concerning the meaning of the language which he used in the award. Arbitrator Roberts indicated that he was not aware, at the time of the hearing, that there was such a thing as a "benefit rate of pay". *Deposition of Raymond Roberts* at 8. He stated that his remedy was intended to be a "make whole" back pay remedy for

the period in question. When informed, by way of hypothetical questions, that the "benefit rate of pay" was reached by adding David Timmerman's base hourly rate to his hourly average commissions, Arbitrator Roberts stated that his award was intended to give David Timmerman his "benefit rate of pay" rather than simply his base hourly rate. *Id.* at 10–14. He also stated that "straight time", as used in the award phrase "straight time hourly rate", was simply intended to exclude overtime from any calculations. *Id.* at 14. He further stated that he was specifically aware, at the time of the arbitration hearing, that David Timmerman was paid on the basis of an hourly wage plus commission and that he intended the term "regular", as used in the award, to be inclusive of all types of remuneration that David Timmerman normally received. *Id.* at 15.

## II. STANDARD FOR SUMMARY JUDGMENT MOTION:

 Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." *Fed.R. Civ.P.* 56(c). *See also Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In passing on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983); *Vette Co. v. Aetna Casualty and Surety Co.*, 612 F.2d 1076, 1077 (8th Cir.1980). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. *Buller*, 706 F.2d at 846. However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e). *See also* 10A Wright, Miller and Kane, *Federal Practice and Procedure: Civil 2d*, § 2739 (1983).

## III. DISCUSSION:

Plaintiff argues that the award of the arbitrator is ambiguous and therefore should be remanded to the arbitrator. Alternatively, plaintiff asserts that in view of Arbitrator Roberts' deposition, it would be futile and unnecessary to remand the award and plaintiff is entitled to an order directing defendant to calculate David Timmerman's back pay on the basis of his "benefit rate of pay." Defendant argues that remand is not proper because the award is not patently ambiguous, and that Arbitrator Roberts' testimony impeaching or explaining his award is both inadmissible and improper under the doctrine of *functus officio*.

 Initially, it is necessary to reject defendant's arguments concerning the admissibility of an arbitrator's testimony concerning the meaning of his/her award and the doctrine of *functus officio*. Defendant relies heavily on state authorities to support its inadmissibility argument. However, it is well-established that § 301 of the LMRA, which is the source of this Court's jurisdiction herein, empowers federal courts to establish and apply a body of substantive labor law. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957). Thus, it is federal, and not state, law which controls the outcome of the case at bar. In addition, it is clear that the common law doctrine of *functus officio*, which states that once an arbitrator issues his/her award he/she is without authority to proceed further or to explain his/her award, does not apply to federal court enforcement of arbitration awards pursuant to § 301 of the LMRA. *Courier-Citizen v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 279 (1st Cir.1983); *Locals 2222, 2320–2327 v. New England Telephone and Telegraph*, 628 F.2d 644, 647 (1st Cir.1980).

 The federal rule of labor law which is applicable to this case is that federal courts have the power to remand an arbitration award, to the arbitrator that issued it, where the award is incomplete,

ambiguous or inconsistent. *Courier-Citizen*, 702 F.2d at 279; *Harvill v. Roadway Express, Inc.*, 640 F.2d 167, 169–70 (8th Cir.1981); *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1263–4 (5th Cir. 1980); *District No. 9, International Assn. of Machinists and Aerospace Workers*, 567 F.Supp. 973, 977 (E.D.Mo.1983); *I.B. E.W. v. Teletype Corp.*, 551 F.Supp. 676, 679–80 (E.D.Ark.1982); *United Steelworkers of America v. ICI Americas, Inc.*, 545 F.Supp. 152, 154–55 (D.Del.1982); *United Steelworkers of America v. Interpace Corp.*, 447 F.Supp. 387, 390–91 (W.D.Pa. 1978). Where an ambiguity is the alleged basis for remanding an arbitration award to the arbitrator that rendered the award, the ambiguity must be patent, glaring, or appear on the face of the award. *Teletype Corp.*, 551 F.Supp. at 680; *ICI Americas, Inc.*, 545 F.Supp. at 155; *Interpace Corp.*, 447 F.Supp. at 391. Latent ambiguities are not a sufficient basis for remand because the necessary judicial scrutiny "would invade the province of the arbitration in contravention of our national labor policy." *Teletype Corp.*, 551 F.Supp. at 680. The foundation for a federal court's power to remand an ambiguous arbitration award is the "policy in favor of clear, *final* awards that completely resolve the dispute originally submitted" to the arbitrator. *Interpace Corp.*, 447 F.Supp. at 391 (emphasis in original). An ambiguous award must be remanded to the arbitrator, rather than clarified by a court, "because a failure to do so would amount to a preemption of the fact finding function assigned to the arbitrator." *ICI Americas, Inc.*, 545 F.Supp. at 154 (citation omitted). However, remand is not necessary where, through subsequent events, it is clear how the arbitrator would resolve the ambiguity or what the arbitrator meant by an ambiguous term in the award. *See e.g., Harvill*, 640 F.2d at 170 (later actions of the grievance panel made clear what the initial award was intended to do); *Bowen*, 624 F.2d at 1264 (court free to interpret the ambiguity to comport with what arbitrator said he meant in a letter clarifying his decision and in trial testimony); *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Division*, 481 F.2d 821, 825 (5th Cir. 1973) (no need to remand where ambiguity was resolved by different arbitrator and remand "would be a pointless gesture.").

▮▮▮▮ Defendant argues that application of these principles to the facts of this case should not result in remand or clarification because the award of Arbitrator Roberts is not patently ambiguous. This Court declines to accept defendant's argument because it is the opinion of this Court that the award is unclear on its face. The phrase that is ambiguous is "regular straight time hourly rate." At the beginning of the decision Arbitrator Roberts referred to David Timmerman's "base hourly rate" plus a commission of 3%. *In re Timmerman* at 4. Arbitrator Roberts thus knew how to expressly refer to David Timmerman's basic wage. If Arbitrator Roberts intended to award David Timmerman back pay at only the "base hourly rate", he could have easily so specified. The phrase "regular straight time hourly rate" can be construed as referring to a base hourly wage. However, in view of the fact that David Timmerman was paid on the basis of an hourly wage plus commission, which fact appears on the face of the award, and the fact that Arbitrator Roberts used a phrase other than "regular straight time" to refer to David Timmerman's base hourly wage, the meaning of "regular straight time hourly rate" is patently ambiguous. This conclusion is justified without reference to the alleged existence of a "benefit rate of pay" or the deposition testimony of Arbitrator Roberts.

The deposition testimony of Arbitrator Roberts, however, is relevant to a determination of whether the ambiguity should be resolved by remand to Arbitrator Roberts or whether it can be resolved by this Court herein. It is the opinion of this Court that, as in *Courier-Citizen* and *San Antonio Newspaper Guild*, it would be a "pointless gesture" to remand this award to Arbitrator Roberts. It is clear from his deposition testimony that he intended the back pay award to be a "make whole" award and that, accordingly, he intended the phrase "regular straight time hourly rate" to mean an average hourly rate based upon

both David Timmerman's base hourly wages and his commission earnings. Plaintiff's apparent failure to introduce evidence, at the arbitration hearing, of the existence or amount of a "benefit rate of pay" does not affect its right to obtain a clarification of a patent ambiguity in the award.

Defendant's argument seems to be that because Arbitrator Roberts did not have any knowledge of a "benefit rate of pay" at the time he made the award, he could not have intended that David Timmerman be awarded back pay at that rate. However, the question is not whether Arbitrator Roberts had knowledge of a "benefit rate of pay" at the time he made the award. The question is what did Arbitrator Roberts mean by the patently ambiguous phrase, "regular straight time hourly rate." Because Arbitrator Roberts' deposition makes it clear that he intended that phrase to mean some "make whole" rate of pay, which encompasses both his base hourly rate and his commission earnings, the question then becomes what rate of pay will satisfy the award. It is the opinion of this Court that a rate of $13.67/hour satisfies the award. This rate encompasses David Timmerman's $7.00/hour base hourly wage and his "benefit rate of pay," or average hourly commission earnings, of $6.67/hour. The figure of $6.67/hour is taken from defendant's own documents, the accuracy and authenticity of which defendant has never challenged. Defendant also does not challenge plaintiff's assertions that the figure of $6.67/hour represents David Timmerman's average hourly commission earnings at the time of his discharge. Arbitrator Roberts' responses to hypothetical questions during his deposition supports this Court's conclusion that the base hourly rate plus the "benefit rate of pay" satisfies the award.

Accordingly, summary judgment in plaintiff's favor is appropriate. Defendant shall calculate David Timmerman's back pay award at the rate of $13.67/hour.

## IV. ATTORNEY'S FEES:

■ Although this Court upholds plaintiff's position herein, it does not follow that plaintiff is automatically entitled to attorney's fees. *Miscellaneous Drivers and Helpers Local Union No. 610 v. VDA Moving & Storage*, 447 F.Supp. 439 (E.D. Mo.1978). Plaintiff is entitled to attorney's fees only if this Court finds that defendant, in refusing to acquiesce in plaintiff's position, acted in bad faith, vexatiously or for oppressive reasons. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975); *International Union of Petroleum and Industrial Workers v. Western Industrial Maintenance*, 707 F.2d 425 (9th Cir.1983); *International Association of Machinists & Aerospace Workers District 776 v. Texas Steel Co.*, 639 F.2d 279 (5th Cir.1981); *General Drivers, Helpers and Truck Terminal Employees, Local No. 120 v. Sears, Roebuck & Co.*, 535 F.2d 1072 (8th Cir.1976). In the case at bar, defendant's conduct was not done in bad faith, vexatiously or for oppressive reasons. As stated, *supra*, defendant's interpretation of the award was reasonable.

Accordingly, plaintiff's request for an award of attorney's fees is denied.