**In the Matter of the Arbitration between Addison M. FISCHER, Petitioner,**

v.

**CGA COMPUTER ASSOCIATES, INC., a/k/a CGA Computer, Inc., Respondent.**

No. 85 Civ. 3895 (DNE).

United States District Court, S.D. New York.

July 3, 1985.

Schupak, Rosenfeld, Fischbein, Bernstein & Tannenhauser, Frederick S. Gold and Nancy R. Sills, New York City, of counsel, for petitioner.

Baer, Marks & Upham, Barry J. Mandel and Kristine Reddington, New York City, of counsel, for respondent.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Petitioner, Addison M. Fischer ("Fischer"), brought this action on May 23, 1985 for confirmation of an arbitration award rendered May 22, 1985. This court has jurisdiction pursuant to 9 U.S.C. § 9 and 28 U.S.C. § 1332. For the reasons set forth below, the arbitration award is confirmed as modified herein, pursuant to 9 U.S.C. §§ 9 & 11.

## FACTUAL BACKGROUND

Fischer is a computer programmer and was a principal of Allen Services Corporation ("ASC"), a computer software company. On or about January 30, 1981, ASC sold its assets to respondent, CGA Computer, Inc. ("CGA"), pursuant to an "Acquisition Agreement," and the parties contemporaneously executed an "Employment Agreement," which was later amended by a First Supplement and Amendment to Agreement.[1] Among the assets sold by ASC to CGA pursuant to the Acquisition Agreement were several computer software programs created and developed by Fischer. Fischer's duties under the employment agreements were to provide training and technical support to CGA in connection with its efforts to market Fischer-created software products and, under certain circumstances, to help develop new software products for CGA. Fischer's compensation was to be in several forms, including, *inter alia*, royalties based on CGA's sales of Fischer-created software products. CGA was required to furnish Fischer at specified intervals with certified audits setting forth and confirming the proper computation of Fischer's royalties.

After a dispute arose between the parties, Fischer, invoking the termination clause in the Amended Employment Agreement, notified CGA that he was terminating all covenants, obligations and duties contained in the parties' agreements. Fischer claimed that CGA had materially breached the employment agreements by, *inter alia*, failing to pay specified royalties, failing to provide certified audits and wrongfully locking Fischer out of CGA's computer facility.

The employment agreements contain an arbitration clause which provides:

> Any controversy or claim arising under or relating to this Agreement or the breach hereof shall be settled by arbitration in New York, New York in accordance with the rules then obtaining of the American Arbitration Association. Judgment upon any award rendered may be entered in any court having jurisdiction thereof.

CGA served an original and amended arbitration demand in which it sought declaratory and monetary relief. CGA sought a declaration that: (1) Fischer remains obligated to perform his duties under the employment agreements; (2) Fischer must deliver to CGA all programs, source codes, object codes and related material created by him during his period of full-time employment with CGA; and (3) CGA is entitled to exercise a right of first refusal with respect to all software programs and modifications developed or acquired by Fischer at any time until and including November

---

1. The employment agreement along with its supplement and amendments are hereinafter referred to collectively as "the employment agreements."

27, 1991. Exhibit E to Petition for Confirmation. CGA also demanded monetary damages resulting from Fischer's breach of the Acquisition Agreement and the employment agreements. *Id.*

Fischer counterclaimed for the following declaratory relief: (1) that CGA had breached the employment agreements; (2) that Fischer is relieved from all duties and covenants under the agreements; and (3) that CGA must grant Fischer access to its computer resources and facilities. Fischer sought monetary damages resulting from CGA's breach of the employment agreements and from its conversion of Fischer's personal property. Fischer also sought an accounting of all monies owed him pursuant to the employment agreements.

On May 22, 1985, the arbitration panel rendered a decision entitled "AWARD OF ARBITRATORS." The AWARD OF ARBITRATORS provides in pertinent part:

WE, THE UNDERSIGNED ARBITRATORS ... FIND as follows:

A. With respect to the Right of First Refusal, Section (13) of the Acquisition Agreement ... has remained and continues to remain in full force and effect for a period of seven (7) years from the closing date as that date is defined in the Acquisition Agreement.

B. ADDISION M. FISCHER ... shall be relieved of his obligations with respect to all Covenants not to compete as contained in paragraph 5 of the Employment Agreement dated February 27, 1981 ...

C. The Minidisk is the property of [Fischer], and directs that [CGA] shall return the minidisk to [Fischer].

D. [Fischer] and [CGA] shall have no further contractual duties to each other under [the employment agreements].

We, therefore, AWARD as follows:

1. [CGA] shall pay to [Fischer] the sum of ONE HUNDRED TWENTY THREE THOUSAND SEVEN HUNDRED SEVENTY DOLLARS AND FIFTY-NINE CENTS ($123,770.59).

2. Each party shall pay their own costs for the audits.

3. The compensation of the arbitrators totaling TWENTY TWO THOUSAND TWO HUNDRED DOLLARS ($22,200.00) shall be borne equally by the parties. Therefore, [CGA] shall pay to [Fischer] the sum of THREE HUNDRED DOLLARS ($300.00) for that portion of its share of said compensation previously advanced by [Fischer] to the Association.

4. The administrative fees and expenses of the American Arbitration Association totaling TWELVE THOUSAND ONE HUNDRED FORTY TWO DOLLARS ($12,142.00) shall be borne as incurred. Therefore, [CGA] shall pay to the American Arbitration Association the sum of ONE HUNDRED TWENTY THREE DOLLARS and FIFTY CENTS ($123.50) for that portion of its fees and expenses still due the Association.

5. This award is in full settlement of all claims and counter-claims submitted to this arbitration.

On May 23, 1985, the day after the arbitration award was rendered, petitioner filed the petition for confirmation.

## DISCUSSION

The petition satisfies all the requirements for confirmation by this court provided in 9 U.S.C. § 9.[2] The parties to the

---

**2.** 9 U.S.C. § 9 provides in pertinent part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the

court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United

arbitration agreement expressly consented to the entry of judgment on the arbitration award by a court of competent jurisdiction. The Southern District of New York is the proper district for the entry of judgment because the award was granted in New York, New York. Respondent does not dispute any of the factual allegations in the petition. Respondent opposes the petition, however, on the ground that the award is ambiguous and requests the court to remand the action for resubmission to the arbitration panel for clarification of the award.

Respondent contends that the award is ambiguous in that it cannot be determined whether the first section, entitled "FINDINGS" constitutes findings of fact or declarations of the parties' rights and duties. Respondent is therefore "concerned about its ability to enforce its rights [under the first section of the arbitration award]." Respondent's Memorandum of law at 3. By reply memorandum submitted June 20, 1985 petitioner requests the court to modify the arbitrator's award by ruling that the word "FIND" as used in the arbitration award is synonomous with "DECLARE". The grant of petitioner's latter request would cure any reasonable "concern" respondent has about enforcing the rights declared by the arbitrator.

■ Although "[c]onstruing ambiguous provisions of an arbitration award is the proper province of the arbitrator, not the courts," *Bell Aerospace Co. Div. of Textron v. Local 516*, 500 F.2d 921, 924 (2d Cir.1974), the award may be confirmed and need not be remanded to the arbitrator, where the true intent of the arbitrator is apparent, *Local 719, American Bakery and Confectionary Workers of America v. National Biscuit Co.*, 378 F.2d 918, 926 (3d Cir.1967); *United Steelworkers of America v. ICI Americas Inc.*, 545 F.Supp. 152, 154 (D.Del.1982); *see also Randall v. Lodge No. 1076, International Associa-*

*tion of Machinists and Aerospace Workers*, 648 F.2d 462, 468 (7th Cir.1981) (arbitrator's decision need not be free from ambiguity to be upheld). Remand should be granted sparingly because of the likelihood that "the arbitrator [will] believe that a 'remand' is equivalent to 'retrial' with an expectation of an opposite result the second time around". *Randall v. Lodge No. 1076, International Association of Machinists and Aerospace Workers, supra*, 648 F.2d at 468. In addition, because remand delays execution of final judgment on the arbitration award, it incurs the danger of "frustrat[ing] the basic purposes of arbitration: to resolve disputes speedily and to avoid the expense and delay of expensive court proceedings." *Federal Commerce and Navigation Co. v. Kanematsu-Gosho, Ltd.*, 457 F.2d 387, 389 (2d Cir. 1972); *accord Diapulse Corp. of America v. Carba, LTD.*, 626 F.2d 1108, 1110 (2d Cir.1980); *cf. Dean Witter Reynolds, Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985) (although "preeminent" goal of the Arbitration Act is the enforcement of private arbitration agreements, the efficient and speedy resolution of disputes is also one of the goals of the Act).

■ Remand should not be granted where the court can resolve any alleged ambiguities in the award by modification, pursuant to 9 U.S.C. § 11. 9 U.S.C. § 11(c) authorizes a district court to modify or correct an arbitration award "[w]here the award is imperfect in matter of form not affecting the merits of the controversy." Modifying the award pursuant to petitioner's request by, in effect, substituting "DECLARES" for "FINDS" in the first sentence of the arbitration award would not affect the merits of the controversy, but merely involves a matter of semantics.[3] The arbitrators have unambiguously determined the rights and liabilities of the par-

States court in and for the district within which such award was made. . . .

**3.** Proper usage of the word "find" is not confined to a dsignation of "findings of fact."

"Find" may also be used to designate the determination of a controversy in favor of one of the parties. Black's Law Dictionary 568 (5th ed. 1979).

ties. Paragraphs "A" through "D" of the arbitrator's "FINDINGS" section clearly constitute statements of the parties' rights and duties and are in the nature of an award. Moreover, the "FINDINGS" section addresses the declaratory relief sought by claimant and counterclaimant to the arbitration. The only plausible reading of the award is that the "FINDINGS" section states the declaratory relief awarded and the "AWARD" section states the monetary relief awarded. Under these circumstances, modification and confirmation of the award rather than remand would not amount to pre-emption of the factfinding function assigned to the arbitrator and is appropriate under 9 U.S.C. §§ 9 and 11(c).

■ By letter dated June 21, 1985, respondent states that it is "unwilling to stipulate ... that the arbitrators intended to relieve petitioner of his obligations under the non-competition clause of his employment agreement," and that it is "unsure ... exactly what the arbitrators did intend with respect to the vigorously contested non-competition issue." This issue, however, was clearly and definitively addressed by the arbitrators in paragraph B of the arbitration award, which states: "[Fischer] ... shall be relieved of his obligations with respect to all Covenants not to compete as contained in paragraph 5 of the [employment agreements]." The arbitrators' intent could not have been stated more clearly. Any "uncertainty" respondent has concerning Fischer's obligations with respect to the covenants not to compete is unwarranted. Further, any objections respondent has to the substance of the arbitrators' "FINDINGS" is rejected, because respondent has not shown, or even alleged, that any portion of the award is in "manifest diregard of applicable law." *UCO Terminals, Inc. Apex Oil Co.*, 583 F.Supp. 1213, 1217 (S.D.N.Y.), *aff'd*, 751 F.2d 371 (2d Cir.1984). The court will not provide respondent with the opportunity to reargue

its case by remanding the action to the arbitrator.

■ Petitioner also seeks an award of costs.[4] Although costs, including attorneys' fees, may be awarded in arbitration enforcement cases if one of the parties unjustifiably refuses to abide by the award, *United States Steelworkers of America v. Interpace Corp.*, 447 F.Supp. 387, 393 (W.D.Pa.1978), this is not an appropriate case for an award of costs. Petitioner commenced this action the day after the arbitration award was rendered. Thus, respondent did not "refuse to abide by the award" before the filing of the petition. In addition, respondent did not have the opportunity to move before the arbitration panel for clarification of the award. Moreover, respondent did not simply default on the petition or cross-move to vacate the award, but suggested the alternative of remand. On the record presented, the court cannot find that respondent has acted "vexatiously" or in "bad faith." *See Mobile Oil Corp. v. Independent Oil Workers Union*, 679 F.2d 299, 305 (3d Cir.1982); *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union 135 v. Jefferson Trucking Co., Inc.*, 473 F.Supp. 1255, 1259–60 (S.D.Ind.1979), *aff'd*, 628 F.2d 1023 (7th Cir.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981).

## CONCLUSION

The arbitration award of May 22, 1985 is modified, pursuant to 9 U.S.C. § 11(c), so that the word "FIND," which introduces the award's first section is deemed synonomous with "DECLARE," and the first section is to be deemed part of the arbitration award. The arbitration award as modified by this order is confirmed, pursuant to 9 U.S.C. § 9. The award as modified shall constitute a judgment of this court, and the clerk shall enter judgment accordingly. Petitioner's application for costs is denied.

SO ORDERED.

---

4. The petition seeks an award of costs, but this request is not addressed or supported in peti-

tioner's memorandum of law.

## ADDENDUM TO OPINION AND ORDER

This is an addendum to the court's opinion and order dated July 3, 1985, which granted the petition for confirmation of an arbitration award. In that opinion, the court found that it had jurisdiction of the petition, pursuant to 9 U.S.C. § 9 and 28 U.S.C. § 1332. The court, however, did not explicitly find that the contract in which the arbitration clause was included is one "evidencing a transaction involving commerce" within the meaning of 9 U.S.C. §§ 1 and 2. *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 703–704 (2d Cir.1985). The court has the power to amend the July 3, 1985 opinion, *sua sponte*, under its inherent power to correct the record. *Allied Materials Corp. v. Superior Products Co.*, 620 F.2d 224, 226 (10th Cir.1980). Because judgment has not yet been entered by the judgment clerk as directed in the July 3, 1985 opinion and order, the proscriptions of Rules 52 and 60(a) of the Federal Rules of Civil Procedure do not apply.

The "commerce" requirement is satisfied if plaintiff's employment contract "contemplates using interstate communication facilities and engaging in interstate activities." *Smiga v. Dean Witter Reynolds, Inc.*, *supra* at 703–704; *see Dickstein v. duPont*, 320 F.Supp. 150, 152 (D.Mass.1970), *aff'd.*, 443 F.2d 783, 785 (1st Cir.1971). Paragraph 10 of the petition for confirmation in this case states that the contracts evidence transactions involving commerce, because "the businesses of ASC and of CGA have been based on the distribution of computer software products throughout the United States, and the services Fischer was to render, and did render, under the Employment Agreement and Amended Employment Agreement required extensive interstate travel by Fischer and were designed to enhance, and did enhance, CGA's customers and sales on a national basis." In addition, paragraph 2 of the petition states that CGA "maintained 16 offices in 13 states throughout the country." CGA has not objected to any factual assertion in the petition or contended that this court lacks subject matter jurisdiction over the peti-

tion. Moreover, the court finds, based on the exhibits and affidavits submitted by petitioner, that the contracts contemplate the use of interstate facilities and interstate activities. Accordingly, the court finds that the Acquisition Agreement and the employment agreements between CGA and Fischer are contracts evidencing a transaction involving commerce, within the meaning of 9 U.S.C. §§ 1 and 2. The July 3, 1985 opinion is hereby amended to reflect this finding.

SO ORDERED.