**JARDINE MATHESON & CO., INC., Petitioner,**

v.

**SAITA SHIPPING, LTD., Respondent.**

**No. 88 CIV. 3656 (SWK).**

United States District Court, S.D. New York.

May 8, 1989.

Healy & Baillie, New York City, for petitioner (Robert G. Shaw and Andrew M. Kramer, of counsel).

Thomas V. Dana, New York City, for respondent.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Petitioner brings this action to obtain an order confirming an arbitration award, and in response, Respondent cross-moves to vacate the award. The arbitration award presently before the Court was issued as a Final Award by a panel of arbitrators selected according to the contract procedure agreed to by the parties. Respondent resists confirmation of the award on the basis that one of the arbitrators was or appeared to be biased. Petitioner claims that Respondent's claims of "evident partiality" and "appearance of bias" on the part of the chairman of the arbitration committee are not substantiated by any evidence. Petitioner also claims that Respondent's cross-motion to vacate was not timely filed. Petitioner also requests an award of costs and reasonable attorney's fees.

## BACKGROUND

While the parties do not contest the facts underlying the dispute between them, they do disagree as to the circumstances surrounding the arbitration. Neither party disputes the procedures taken to procure the arbitration agreement. The precise issue presented to the Court concerns a challenge to the impartiality of one of the arbitrators.

The underlying dispute between Jardine Matheson & Co. ("Jardine") and Saita Shipping, Ltd. ("Saita") concerns a contract entered into between the Petitioner's assignor, Chien Nan Steel & Iron Co. Ltd., (hereinafter "Chien Nan"), which acted as buyer, and the Respondent Saita, which served as seller. The contract involved an agreement by Chien Nan to purchase a vessel, the "Eastway," from Saita.

At the time of the contract, both parties agreed to a Memorandum of Agreement (hereinafter "MOA"), which provided for arbitration to resolve any disputes arising in connection with interpretation and fulfillment of the contract. The MOA also provided that an award on disputes arising under the MOA "shall be final and binding upon the parties and may if necessary be enforced by the court or any other competent authority in the same manner as a judgment in the court of justice."

According to Clause 14 of the Memorandum of Agreement, either party could demand arbitration.[1] See Notice of Hearing, Exhibit "A", Clause 14. Petitioner alleges that after experiencing numerous difficulties in the purchase of the "Eastway", see Notice to Confirm Arbitration, Exhibit D at 2–7, it demanded through their counsel that Saita submit to arbitration. Petitioner sought damages for the vessel being delivered as a "dead" vessel, for the engines and other facilities being non-operative because of general disrepair and poor maintenance, for shortage of bunkers to run the plant, and for the inability of the vessel to pass through the Panama Canal because of

---

1. Clause 14 of the MOA states:

   If any dispute should arise in connection with interpretation and fulfillment of this contract, same shall be decided by arbitration in the city of New York and shall be referred to a single arbitrator to be appointed by the parties hereto. If the parties cannot agree upon the appointment of the single arbitrator, the dispute shall be settled by three arbitrators, each party appointing one arbitrator, the third being appointed by the Society of Maritime Arbitrators Inc. in New York. If either of the appointed arbitrators refuses or is incapable of acting, the party who appointed him, shall appoint a new arbitrator in this place.

   If one party fails to appoint an arbitrator—either originally or by way of substitution—for two weeks after the other party having appointed his arbitrator, has sent the party making default notice by mail, cable or telex or to make the appointment, the Society of Maritime Arbitrators Inc. shall after application from the party having appointed his arbitrator, also appoint an arbitrator on behalf of the party making default.

   The award rendered by the arbitration court shall be final and binding upon the parties and may if necessary be enforced by the court or any other competent authority in the same manner as a judgement in the court of justice.

various problems. Additionally, Petitioner indicates that the ship was delivered at Balboa, as planned, but that they were unable, because of the above-mentioned difficulties, to conduct an ocean tow of the ship to Taiwan until the extensive repairs were done and the ship was restored with a new crew.

Jardine, as assignee of the buyer, thereafter, appointed Mr. Jack Berg as an arbitrator and demanded an award for the damages mentioned above plus other expenses incurred. Jardine also demanded that Saita either accept Mr. Berg as a single arbitrator or, in the alternative, appoint a second arbitrator within two weeks as prescribed by Clause 14 of the MOA. Although Jardine gave Saita several months of extensions no arbitrator was ever appointed. Finally, on June 5, 1985, according to the provisions of the MOA, the law firm of Healy & Baillie, on behalf of Jardine, wrote to the Society of Maritime Arbitrators (hereinafter "SMA") requesting that an arbitrator be appointed for Saita and that a third arbitrator be appointed as a chairman of the arbitration panel.

On June 6, 1985, SMA appointed Peter Vismans as Saita's arbitrator and appointed Fernidad Sauer, as the third arbitrator and chairman of the arbitration panel. Both parties agree that the actions taken by the parties are in accordance with the terms agreed to in the MOA.

As required under SMA rules and regulations, the respective arbitrators, once chosen, were required to make disclosures. The adequacy of the disclosures made or omitted by Mr. Sauer are presently in dispute. Mr. Sauer disclosed the following: he was employed as a corporate officer of a business called Transport Mutual Services, Inc. ("TMS"), he was familiar with many arbitrators through membership in SMA and through various other arbitration panels on which he had sat, and therefore he was familiar with the other arbitrators on this panel; he also pointed out that he had been hired by Healy and Baillie, Petitioner's counsel, to represent their clients in other arbitrations and that he also was

aware that his firm, TMS, had retained Healy & Baillie as counsel on a case-by-case basis. Mr. Berg's and Mr. Visman's disclosures are not in controversy in this dispute, and therefore, the Court need not expand upon them.

After disclosures were made, Saita requested that Steven Coutsodontis be substituted, instead of Vismans, as their arbitrator. All the parties agreed, and the substitution was made. His disclosures were also timely made, and are not controverted in the present dispute. On October 2, 1985, the first hearing of the arbitrators was called and additional disclosures were given. At this meeting, the counsel for Saita, Mr. Dana, further questioned Mr. Sauer to determine if he could be impartial based on the fact that his employer, TMS, had business relationships with Healy and Baillie. Mr. Sauer's response seemed adequate enough to allay their doubts, and therefore, Mr. Sauer was kept as a member of the arbitration panel.

Thereafter, sometime between the dates of October 2, 1985, and August 11, 1985, evidence and briefs were presented to the panel by the respective parties. Finally, on August 12, 1986, the panel deliberated, and according to the affidavits submitted by the arbitrators, a unanimous decision was made within two or three hours. The panel awarded Jardine $148,521.89 for damages incurred. At the time the award was determined Sauer, as chairman of the panel, was nominated to draft the award.

On December 31, 1987, before Sauer drafted the award, he retired as director of TMS, his employer. According to Mr. Sauer he drafted the arbitration award in early January, 1988, following this retirement from TMS, and he thereafter submitted it to the other arbitrators for approval. At approximately the same time, Mr. McMahon, counsel for Jardine at the arbitration proceeding, left his law firm Healy & Baillie to set up his own practice. As the facts presented by the parties confirm, sometime in the earlier part of December of 1987, Mr. McMahon entered into an agreement with TMS to lease office space from them, and by January 4, 1988, Mr. McMahon had moved out of his office at Healy & Baillie and had moved into his

new office located in the same office space as TMS. McMahon also rents use of the telephone and photocopying equipment.

The two other arbitrators who sat on the panel with Mr. Sauer swore in affidavits that Mr. Sauer's drafting of the award was an accurate depiction of the panel's unanimous decision. An affidavit from Mr. Sauer's former boss, President of TMS, and an affidavit from Mr. McMahon, Petitioner's counsel, state that Mr. Sauer was in no way involved in the arrangement of renting the office space at TMS to Mr. McMahon.

On February 9, 1988 the Arbitration Award was signed by each arbitrator. Saita refused to release funds in escrow to pay the amount awarded. Saita also refused to pay its fair share of the arbitrator's fee. This petition ensued.

### DISCUSSION

The Memorandum of Agreement contained in the contract between the Petitioner and Respondent is governed by the United States Arbitration Act (hereinafter "the Act") which covers contracts of maritime and international commercial transactions as required by Section 2 of the Act and as defined in Section 1, 9 U.S.C.S. §§ 1, 2.[2] This court also has jurisdiction to confirm or vacate an Arbitration Award pursuant to Section 9 of the Act, 9 U.S.C.S. § 9.[3] Section 10 of the Act articulates the standards upon which the court may consider the vacating of an arbitration award.[4]

■ This Court's jurisdiction under Sections 9 and 10 of the Federal Arbitration Act "is severely limited, since, if it were otherwise, the ostensible purpose for resort to arbitration, which is the avoidance of litigation, would be frustrated." *C.A. Tinaway v. Merrill Lynch & Co., Inc.*, 658 F.Supp. 576, 578 (S.D.N.Y.1987) (quoting *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.), *cert. denied*, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960)). The Court's role in the review of arbitration awards is restricted to ascertaining whether one of the specific grounds for vacating the award exists; if none exists, Section 9 requires that, on application of any party to the arbitration proceedings, the Court confirm the award. *Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 582 (2d Cir.1967).

■ As a general rule, "[c]ourts [have been] reluctant to set aside arbitration awards based on a claim of evident partiality, and will do so only if [the] bias of [the] arbitrator is direct and definite; mere speculation is not enough." *Sofia Shipping Co., Ltd. v. Amoco Transport Co.*, 628 F.Supp. 116, 117 (S.D.N.Y.1986). Applying this policy to the present case, this Court concludes that the renting of office space by the employer of one arbitrator to the lawyer for one of the parties, does not demonstrate "evident partiality" and any claim that it would is mere "speculation".

The Second Circuit, in determining that "evident partiality" must be something more than an "appearance of bias" but less than a showing of actual bias, has defined "evident partiality" as that partiality "found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp. v. New York City*

**2.** Section 2 states:

A written provision in any maritime transaction or a contract evidencing ... an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

**3.** Section 9 states:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

**4.** Section 10 states in relevant part:

In either of the following cases the United States Court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

\* \* \* \* \* \*

(b) where there was evident partiality or corruption in the arbitrators, or either of them.

*Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2nd Cir.1984) (court held that a father-son relationship between an arbitrator and an officer of one party to the arbitration constitutes "evident partiality"). The Court of Appeals reached this conclusion after noting that arbitrators in particular fields inevitably tend to know each other and work together at various times. *Id.* at 83. The Second Circuit has previously determined that it would be inappropriate to vacate an arbitration award based on contacts between an arbitrator and counsel to one of the parties that only created an appearance of bias. *International Produce Inc., v. A/S Rosshavet,* 638 F.2d 548, 552 (2d Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981). "The fact that there is an overlap in the relations of the individuals involved does not in itself provide grounds for vacating an award." *Sofia Shipping, supra,* 628 F.Supp. at 122; *see also Andros Compania Maritima v. Marc Rich & Co., A.G.,* 579 F.2d 691, 701 (2d Cir.1978) (the very intimacy of the group from which specialized arbitrators are chosen suggests that the parties can justifiably be held to know at least some kind of basic information about an arbitrator's personal and business contacts).

Based on the facts of this case, the Court concludes that the award should be confirmed and that the motion to vacate should be denied.[5] The contacts between the arbitrator and counsel for Petitioner certainly do not rise to the level of evident partiality. No substantive contact between the arbitrator and counsel is suggested; instead, Respondent urges that partiality results from Mr. McMahon's lease of space in December, 1987 from the employer of Mr. Sauer, only a few days or weeks before Sauer left TMS and slightly before Sauer wrote the arbitration award. McMahon states in his affidavit that he encountered Sauer on one occasion at the TMS offices, exchanged pleasantries, and did not discuss any terms of the rental arrangement.

The Court does not believe that this tenuous contact suggests or establishes evident partiality: a reasonable person under these circumstances would not conclude that Sauer was biased or had any reason to be so. Sauer had previously informed Respondent that TMS had business relationships with Healy and Baillie and Respondent did not object. All arbitration hearings were conducted long before McMahon decided to leave Healy and Baillie and rent space from TMS in late 1987. The arbitrators reached a decision in August, 1986. McMahon left Healy and Baillie and did not continue to represent Petitioner. Sauer's co-arbitrators have indicated that the award written by Sauer reflects the panel's unanimous decision, strongly suggesting to the Court that McMahon's subsequent contact with TMS in December, 1987 did not in any way influence the outcome. The fact that Sauer did not inform Respondent in late 1987 that McMahon had rented the office space is of no consequence. Sauer could reasonably assume that such disclosure was not necessary under the circumstances because: (1) he played no part in the arrangement of the rental, (2) the McMahon was no longer going to be counsel to Petitioner, and (3) the arbitration decision had already been made. Even if Sauer should have disclosed this tenuous relationship, the failure to disclose would not warrant vacatur. *See Sanford Home for Adults v. Local 6, IFHP,* 665 F.Supp. 312, 318 (S.D.N.Y.1987) (noting "the unwillingness of the courts to overturn the awards of arbitrators for failure to disclose"). Indeed, vacatur would not necessarily be appropriate even if Sauer and McMahon actually had an undisclosed business relationship. *Id.; see Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.,* 659 F.Supp. 1346, 1352–54 (S.D.N.Y. 1987) (holding that vacatur was not appropriate, even though arbitrator owned stock in company with relationship to one of the parties), *aff'd mem.,* 841 F.2d 1117 (2d Cir. 1988).

This Court has in the past noted that "a reviewing court must find some personal interest on the part of the arbitrator, whether pecuniary or otherwise, that ex-

---

5. For this reason the Court does not reach the question of the timeliness of Respondent's cross- motion to vacate.

tends beyond any personal views on the merits of the matter before him or her" in order to vacate an award for "evident partiality." *See Tinaway, supra,* 661 F.Supp. at 941 (quoting *Sidarma Societa Italiana Di Armamento SPA, Venice v. Holt Marine Industries, Inc.,* 515 F.Supp. 1302, 1306–07 (S.D.N.Y.), *aff'd mem.,* 681 F.2d 802 (2d Cir.1981)). The Court does not find any personal interest or gain on the part of Mr. Sauer in this case. Sauer and McMahon had no business relationship with each other, and had no contact that would suggest bias.

■ In its Memorandum of Law, Respondent contends that a hearing is necessary since an "attorney in Greece and a ship owner both allege that in a conversation with Mr. McMahon, concerning his representation of them in a commercial ship charter arbitration, he assured them that if he could obtain Mr. Sauer's and Mr. Berg's appointment to that panel of arbitrators, Messrs. Berg and Sauer would be inclined to find in their favor." Memorandum of Law at 7. The Court first notes that this accusation is unsubstantiated and neither the Greek attorney nor the ship owner have submitted affidavits. Second, the statement, even if true, would not compel vacatur since McMahon could simply have meant that Sauer would tend to find in their favor based on Sauer's own judgment and the facts of the case.[6] Arbitrators, even if impartial, will have certain, definite ideas about particular matters based on their experience in the industry. *Morelite Constr., supra,* 748 F.2d at 83 ("a given expert may be expected to have formed strong views on certain topics, ..."). The statement, if true, would not establish that Sauer was biased in favor of McMahon's clients. A hearing is not necessary under these circumstances.

### Sanctions

■ Petitioner also moves for sanctions pursuant to Fed.R.Civ.P. 11 on the basis that Respondent's refusal to comply with the arbitrators' award is frivolous and that their arguments are interposed simply to delay compliance. Rule 11 states in part

that [the signing attorney] has read the pleading ...; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, ...

The "after reasonable inquiry" language "imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985), *cert. denied,* — U.S. —, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Rule 11 imposes an objective standard, and an attorney's good faith subjective belief is irrelevant. *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). The imposition of sanctions is mandatory when pleadings are not warranted by existing law or an extension, modification or reversal of existing law. *Eastway Constr., supra,* 762 F.2d at 254. Claims which are "destined to fail" or which have "absolutely no chance of success" warrant sanctions. *Id.* In considering the imposition of sanctions, "the court is to avoid hindsight and resolve all doubts in favor of the signer." *Oliveri, supra,* 803 F.2d at 1275.

■ Under the circumstances of this case, sanctions are appropriate. Respondent did not discuss the recent leading cases in this area in this Circuit and ignored the Second Circuit's admonition that something greater than the appearance of bias is necessary to vacate an award. In this case, the Court has no hesitation in concluding that the facts do not establish even the appearance of bias, let alone evident partiality. Although Respondent argues at some length about the importance of early disclosure, Respondent did not discuss recent decisions in this District holding that failure to disclose under circumstances less compelling than those present here would not warrant vacatur. The Court can only conclude that Respondent interposed its defenses simply as a last-

---

**6.** Respondent nowhere else suggests that Berg might also have been biased.

ditch effort to avoid complying with the arbitrators' award. Arbitration is designed as a speedy, efficient process for resolving disputes. Resort to litigation should be limited to those instances when a party has a colorable chance of success. Respondent did not here, and an exploration of the relevant cases would have exposed the defects in Respondent's theory at an early date. The Court, choosing to exercise its discretion to sanction rather than compensate, *see Zerman v. Sullivan & Cromwell*, 677 F.Supp. 1316, 1324 (S.D.N.Y.1988), awards Petitioner's counsel fees in the amount of $1000.

### Conclusion

For the above stated reasons, the Court confirms the arbitration award and denies Respondent's motion to vacate the award. The Court does not reach the question of the timeliness of Respondent's cross-motion to vacate. In addition, the Court awards fees to Petitioner's counsel in the amount of $1000.

SO ORDERED.