977 F.2d 1235
 141 L.R.R.M. (BNA) 2512, 61 USLW 2283,
123 Lab.Cas. P 10,416
 M & A ELECTRIC POWER COOPERATIVE, Appellant,
v.
LOCAL UNION NO. 702, INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO, Appellee.
M & A ELECTRIC POWER COOPERATIVE, Appellant,
v.
LOCAL UNION NO. 702, INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO, Appellee.
 Nos. 91-3226, 91-3689.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 16, 1992.
Decided Oct. 15, 1992.
 
 David Welch, St. Louis, Mo., argued (Daniel K. O'Toole, on the brief), for appellant.
 Sally E. Barker, St. Louis, Mo., argued, for appellee.
 Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 HEANEY, Senior Circuit Judge.
 
 
 1
 At issue on this appeal is whether the district court erred in refusing to set aside an arbitrator's award. The arbitrator found that the M & A Electric Power Cooperative (M & A) did not have just cause to discharge Charles Hardin. It ordered that Hardin be reinstated with full seniority but without back pay for wages, vacations, or holidays. M & A argued below and argues here that the award should be set aside because of the misconduct of the arbitrator. We agree with the district court that even though the arbitrator's post-hearing consultation with an official of the International Operating Engineers Union was improper, the arbitrator based his decision on record evidence and the consultation did not taint the decision.
 
 
 2
 The essential facts are that Hardin was classified as a lead lineman and occasionally worked as a crew leader. He was discharged on October 6, 1989. The notice of termination stated that the termination was based on his entire work record, his unsafe work attitude, his failure to follow work instructions, and careless performance of his duties in the month preceding the termination. Hardin filed a grievance protesting his discharge pursuant to the provisions of a collective bargaining agreement between M & A and Local Union No. 702, International Brotherhood of Electrical Workers, AFL-CIO (Union). The parties were unable to resolve the grievance, and the matter was submitted to an arbitrator selected from a list of arbitrators provided by the Federal Mediation and Conciliation Services.
 
 
 3
 An arbitration hearing was held on June 14, 1990, and both parties submitted extensive evidence with respect to Hardin's work record and the incidents that triggered his discharge. The arbitrator made the following observations:
 
 
 4
 1. Hardin was a twenty-year employee who had been reprimanded once during that period in 1988 and had been placed on probation for a period of six months. During this probation, Hardin was counselled by his superintendent, after which Hardin improved. The arbitrator stated that the probation should be considered an indicator that the twenty-year employee had an attitude problem which was correctable.
 
 
 5
 2. The incidents for which Hardin was allegedly discharged were not called to his attention at the time. Thus it appears that supervision was more interested in building a discharge case than they were in getting problems corrected as they occurred.
 
 
 6
 3. The specific incidents for which Hardin was discharged were either not serious, not the responsibility of Hardin, or were the joint responsibility of Hardin and others who were not disciplined.
 
 
 7
 4. At the hearing, M & A brought up an incident other than those mentioned as the cause of the discharge, namely, a run-away crane that occurred prior to Hardin's disciplinary probation in 1988. Notwithstanding that this incident was not listed as a basis for the discharge, the arbitrator discussed it at some length. He stated:
 
 
 8
 During WWII I was a captain in the F.A. 240mm Howitzer Btry. As part of my duties, I was a Btry. Commander and the Bn. crane officer (we had 3 large mobile cranes). I was sent to the Lorain Thew Shovel Company Lorain, Ohio Crane School with some 16 operators under my command and continued in this capacity for some three years.
 
 
 9
 To further reinforce my crane training and experience I have just made inquiry (without divulging my reasons) of an International Officer of the Operating Engineers Union, who in the past has been both an instructor for among others, crane operators and a safety instructor in their apprentice school.
 
 
 10
 In response to my question as to who is responsible for both the operation and the safety of the crane, the operator or the supervisor of a crew which has a crane in the crew. He unequivocally stated, "the crane operator".
 
 
 11
 Once the crane operator gets behind the controls he is responsible for the safe movement of the crane, the safe booming of the crane, the safe emplacement of the crane ect., [sic] including setting the outriggers. You can delegate authority but you can not [sic] delegate responsibility.
 
 The arbitrator concluded:
 
 12
 Cases involving discharge are scrutinized very carefully (especially for a 20 year service employee) to see if progressive discipline has been utilized, has even handed discipline been applied to all employees and has there been a concerted effort to rehabilitate a long service employee.
 
 
 13
 In this case there was only one instance of this, which resulted in a 6 month probationary period and after the 3rd (one each month) session the supervisor thought that the employee had progressed for [sic] enough, that he asked that the employee files remain clean. This was done.
 
 
 14
 ....
 
 
 15
 There is no question that the Grievant was a less than model employee, but he did not deserve to be fired. Especially without a chance to shape-up as the events happened. The punishment should fit the crime.
 
 
 16
 The employee therefore is to be put back to work the start of the first week following receipt of this award in the same or equivalent position with no loss of seniority.
 
 
 17
 The time off from his date of termination until his return to work is to be considered as a disciplinary "layoff" and his record is to be so reflected.
 
 
 18
 He is not to receive any back pay for wages, or vacation or holidays.
 
 
 19
 He is to receive a refresher course in procedures, safety, company rules and to be told in writing what is expected of him.
 
 
 20
 It is hoped that he has learned his lesson and it is expected that he will return to become an above average employee.
 
 
 21
 Thereafter, M & A filed a complaint with the United States District Court to vacate the award, alleging that the arbitrator's conduct in deciding the grievance based in part on the ex parte communication with an officer of the International Union constituted misconduct depriving M & A of a fair hearing. The Union answered and filed a counterclaim for enforcement of the arbitration award. Both parties then submitted cross-motions for summary judgment.
 
 
 22
 The district court granted the Union's motion for summary judgment and denied that of M & A. It held that the arbitrator's post-hearing consultation was a violation of his own rules and the procedural regulations of the Federal Mediation and Conciliation Service, as well as Title 29 C.F.R. § 1404.14, which provides that the decisions of all arbitrators listed in the Federal Mediation and Conciliation Service list of arbitrators is to be based upon the evidence and testimony presented at the hearing. The court then stated that although the arbitrator's post-hearing consultation constituted misbehavior, it is not dispositive, and that to vacate an arbitrator's award, the misbehavior of the arbitrator must have deprived the party seeking a vacation of a fair hearing. The court then noted:
 
 
 23
 In the instant matter a review of the arbitrator's decision reveals that the decision to reinstate Hardin was based upon Hardin's long-term employment with M & A, M & A's failure to discipline Hardin progressively, M & A's failure to provide Hardin with an opportunity for rehabilitation, and M & A's propensity to discipline Hardin, but not other employees, accountable for the incidents. Although M & A asserts that the post-hearing consultation tainted the entire decision, the text of the arbitrator's decision reveals otherwise. The arbitrator, who is experienced in the operation of cranes and capable of attributing fault for the crane mishaps based on that experience, made a brief and rather general inquiry of another person with extensive crane experience. The response of the union officer corroborated that of the arbitrator. Because the Court believes that the source of the arbitrator's decision is based upon the testimony and other evidence presented at the hearing, the Court concludes that M & A was not deprived of a fair hearing by the arbitrator's misbehavior.
 
 
 24
 We agree with the district court that the arbitrator acted improperly in consulting with the International Officer of the Operating Engineers Union. Arbitrators must meticulously refrain from such outside-the-record consultations if the arbitration process is to continue to be respected and used by labor and management. Nevertheless, we are convinced, as was the district court, that the post-hearing consultation did not taint the arbitrator's decision.[1] This court has held that an arbitrator's conduct must be such that a party can say that he was deprived of a fair hearing by the challenged conduct, Grahams Serv., Inc. v. Teamsters Local 975, 700 F.2d 420, 422 (8th Cir.1982), and the party seeking a vacation of an award on the basis of ex parte conduct must demonstrate that the conduct influenced the outcome of the arbitration. Here, we conclude that the arbitrator's conduct neither deprived M & A of a fair hearing nor influenced the outcome of the arbitration.
 
 
 25
 M & A relies heavily on Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc., 607 F.2d 649 (5th Cir.1979), to support its demand for vacation. In that case, Totem and North American entered a six-month time charter agreement for a vessel owned by North American. Well into the charter period, Totem terminated the charter. North American sought arbitration, providing an itemized statement for its damages, the largest being a specific contract amount for retrieving the vessel. Totem counterclaimed, saying the vessel was unfit and had been returned to a mutually agreed upon port. Even though North American did not request damage for charter hire, the arbitration panel awarded it nonetheless, saying the proper measure of damage was the balance of the charter hire due less the earnings of the vessel during that period. To determine this figure, the arbitrator appointed by North American telephoned North American's counsel, who supplied the figures necessary to complete the computation. Totem was neither notified of the conversation nor given an opportunity to respond to the figure furnished by North American. The court set aside the award on two grounds. First, the arbitrators exceeded their power by awarding damages not requested by North American; and second, after the arbitrators extended the scope of the arbitration, they relied on an ex parte conversation to determine that damage. Thus, the ex parte communication was not merely peripheral but went to the heart of the matter.
 
 
 26
 We affirm the district court and remand to it with directions to enter judgment enforcing the arbitrator's award. Costs of this appeal are taxed to the appellant. The Union's request for attorneys' fees on appeal is denied.
 
 
 
 [1]
 The arbitrator disclosed in the award that he contacted an official of the International Operating Engineers Union. The fact that he disclosed this information to both parties does not excuse the arbitrator's conduct, but it indicates that he did not act in bad faith. Compare Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), where the Court set aside an award only because of the arbitrator's failure to disclose business dealings with one of the parties