**PINE VALLEY PRODUCTIONS,**
Plaintiff,

v.

**S.L. COLLECTIONS, Defendant.**

**No. 93 Civ. 1490 (CBM).**

United States District Court,
S.D. New York.

Aug. 6, 1993.

Peter Laird, Arrow Edelstein & Laird, Los Angeles, CA, for Pine Valley Productions.

Baba Zipkin of Hall, Dickler, Lawler, Kent & Friedman, New York City, for S.L. Collections.

## OPINION ON MOTION TO CONFIRM ARBITRATOR'S AWARD

MOTLEY, District Judge.

The instant dispute arises out of an arbitration over the alleged breach of a contract between Pine Valley Productions (PVP) (and its principal, Susan Lucci) and S.L. Collections. (SLC). The contract in question is an agreement between the parties wherein SLC would develop healthcare and beauty products for national marketing. These products were to be endorsed by Susan Lucci ("Lucci"), a well-known television actress. The agreement provided that Lucci would lend her name and likeness to endorse merchandise. In return PVP would receive 20% of the gross income realized from product sales. (See Ex. A to S.L. Collections' Motion to Confirm Award).

On April 1, 1990, PVP and Golden Images, Inc. signed a written contract for the national direct television marketing of products to be endorsed by Lucci, the principal behind PVP. By agreement dated December 21, 1990, Golden assigned all of its rights and liabilities under the April 1 contract to SLC.

On March 5, 1991, PVP, SLC, and Lucci entered into a written contract with QVC Network ("QVC"). QVC is a direct marketing cable station. Its programming consists solely of the display of various consumer goods which it then markets and sells over cable television channels. Viewers are presented with various products on television and invited to telephone in their orders.

The QVC Agreement specified that QVC would market, distribute, and promote over its televised shopping program products to be provided by SLC and endorsed by Lucci. The QVC Agreement provided that Lucci and SLC would not promote products covered under the QVC Agreement on television other than on QVC during the term of the Agreement and, under certain circumstances, for a period of two years after its termination (See QVC Agreement, Ex. B to S.L. Collections' Motion to Confirm Award).

In the summer of 1991, PVP and SLC entered into negotiations aimed at: (1) adding a new product line of skin care products to the QVC Agreement; (2) limiting the exclusivity provisions of the QVC Agreement to skin care and hair care products; and (3) revising the income division between the parties. Six drafts of the Agreement were written, but the last version ("Draft 6") was never signed.

In early 1992 certain disputes arose between PVP and SLC. When they could not be resolved the disputes were submitted in May of 1992 by SLC to arbitration in New York pursuant to the Commercial Arbitration Rules of the American Arbitration Association as provided for in ¶ 6 of the QVC Agreement. (See SLC's Demand for Arbitration, Ex. D to SLC's Motion to Confirm). QVC was not a party to the arbitration.

The arbitration took place before Bertrand Lanchner, Esq. in October and November of 1992. After the close of the proceedings, but before the rendering of an award, PVP sought to introduce as evidence a letter of December 18, 1992 from Douglas Briggs of QVC to Steven Goldberg of SLC ("December 18 Letter"). The December 18 Letter stated that QVC had "no present intention to promote the sale of Susan Lucci Collection Professional Hair Care Products provided by SL Collections, Inc." SLC opposed admission of the December 18 Letter. After due consideration the Arbitrator chose not to accept it into evidence.

On December 30, 1992, the Arbitrator issued an Award, finding that Draft 6 was a binding agreement between PVP and SLC. (December Award, Ex. F to SLC's Motion to Confirm (hereinafter December Award) ¶ 2). Paragraph 4 of the December Award found that "LUCCI must perform on QVC in regard to the hair care line, must reasonably agree to additional hair care line products, PVP and CLAIMANT must enter into good faith negotiations to agree on a line of skin care products, and LUCCI must perform on QVC in regard to such skin care products. If PVP and LUCCI refuse to act as above specified, CLAIMANT will be entitled to damages, to be determined, and an injunction

against PVP and LUCCI whereby they will be precluded from performing on direct marketing cable stations in regard to hair and skin care products."

Paragraph 8 of the December Award further provided that "[t]he arbitrator shall retain jurisdiction with respect to any issues that may arise out of Paragraph # 4 above of this Award."

The dispute was not resolved, however, for QVC refused to put Lucci back on air. By letter dated January 11, 1993, SLC sought modification of the December Award on the basis of the Briggs Letter and oral communications with QVC through their attorney. In these communications QVC explicitly stated that even though the disputes between SLC and PVP had been arbitrated, QVC had no intent to put Lucci back on the air (Affidavit of Alan Feldstein, counsel to SLC, ¶ 18). PVP opposed SLC's petition and in doing so wrote "to request as modification of the award certain clarifications necessitated by SLC's conduct since the award was entered." (Letter of PVP to Lanchner of January 15, 1993, at 1, Ex. I to SLC's Motion to Confirm).

On February 26, 1993, the Arbitrator issued the February Award, taking into account the Briggs Letter. The February Award amended the December Award by, inter alia, (1) enjoining Lucci from "appearing on QVC in regard to hair and skin products for the term of the agreement" between PVP and SLC in the event that QVC abrogates its agreement with PVP and SLC; (2) rendering SLC's right to injunctive relief against PVP contingent upon actions by QVC; (3) providing that PVP and SLC "advise QVC that their respective differences have been resolved by this arbitration decision" and that PVP and SLC "are prepared to fulfill the terms and conditions of the QVC Agreement"; (4) providing that in the event the QVC abrogates the QVC Agreement, PVP and SLC "shall cooperate, using their respective best efforts and in good faith, to obtain time on another direct marketing cable station." (February Award, Ex. L to SLC's Motion to Confirm).

Before the court are two petitions: PVP seeks confirmation and modification of the December Award and a vacatur of the February Award. SLC seeks a confirmation of the December and the February Awards.[1] For the following reasons, the December Award as modified by the February Award must be confirmed by this court.

*Strong Policy Favors Confirmation of Awards.*

There are strong public policy considerations favoring confirmation of an arbitrator's award. Unless one of the statutory grounds for vacating or modifying under 9 U.S.C. §§ 9 or 11 is present, a federal district court is to confirm the award of an arbitrator. *Ottley v. Schwartzberg*, 819 F.2d 373, 375 (2d Cir.1987); *Jardine Matheson & Co. v. Saita Shipping, Ltd.*, 712 F.Supp. 423, 426 (S.D.N.Y.1989).

■ A court is bound to confirm an award even if it would have come to a different conclusion, as long as rational grounds exist for the arbitrator's decision. "A court may not question provisions of the award itself; rather, they may vacate only for conduct that has prejudiced the rights of the parties." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984).

■ There is nothing in the February Award or in the conduct of the arbitrator in issuing the February Award that prejudices the rights of PVP or Lucci. The February Award merely provided a mechanism for effectuating the intent of the December Award that PVP and Lucci honor their obligations to SLC to market on a cable television home shopping program certain consumer goods.

*To The Extent That the February Award Modified the December Award, Any Such Modification By The February Award was to Form Only And Thus Was Permissible.*

PVP contends that under the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA"), only a court may modify an arbitrator's award and, therefore, the February Award amounted to an impermissible modification of

---

1. Since there are cross-petitions the parties will not be referred to as petitioner or respondent; rather, their corporate names shall be used instead.

the December Award. PVP argues that in issuing the February Award the Arbitrator exceeded his powers. PVP would therefore have the court vacate the February Award and confirm the December Award (but only after modifying it).

PVP misconstrues the law. A court may vacate an arbitrator's award under both the FAA, 9 U.S.C. §§ 10–11, and New York Civil Practice Law and Rules ("CPLR") § 7511, where the arbitrator exceeded his power or so imperfectly executed it that a final and definite award on the matter submitted was not made. Here, however, the arbitrator merely amended the *form* of the award. He kept intact the central intent which was that PVP and SLC were to continue to market Lucci-endorsed products on direct marketing cable television stations.

The FAA applies to written arbitration provisions in contracts involving interstate commerce. 9 U.S.C. § 1. There is no dispute that the instant action, involving national marketing on the airwaves, implicates interstate commerce.

Under New York law an arbitrator is permitted to modify his or her own award under certain conditions. CPLR §§ 7509 and 7511(c) permit an arbitrator to modify his award if it "is imperfect in a matter of form, not affecting the merits of the controversy."

PVP's assertion that the FAA is a substantive rule of law that preempts state laws such as CPLR §§ 7509 and 7511(c) is manifestly erroneous. *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984), which PVP cites for this proposition, simply fails to support PVP's stance. In *Southland*, the state law provision in question was in direct conflict with the FAA. *Southland*, 465 U.S. at 10, 104 S.Ct. at 858, 79 L.Ed.2d at 12. The *Southland* Court was confronted with a state law providing that certain claims were not arbitrable, irrespective of the prior agreement of the parties.

In contrast, the instant case involves a state law scheme governing the mechanism of the arbitration process.

■ It is beyond dispute that the FAA only preempts *conflicting* state law. *Volt Information Sciences, Inc. v. Stanford University*, 489 U.S. 468, 476–77, 109 S.Ct. 1248, 1254–55, 103 L.Ed.2d 488, 492 (1989). State law may supplement the FAA to the extent it does not conflict with it. *New England Energy, Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 5–6 (1st Cir.1988), cert. den., 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989); *Long Beach v. Catalyst Waste–to–Energy Corp.*, 144 Misc.2d 119, 543 N.Y.S.2d 1013, 1016 (S.Ct.1988).

■ Where New York law does not conflict with FAA it is to be applied. *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 517 (2d Cir.1991), cert. den., —— U.S. ——, 112 S.Ct. 1241, 117 L.Ed.2d 474 (1992). CPLR § 7509 allows for modification of an arbitrator's award by the arbitrator on the same grounds available to a judge under CPLR § 7511. CPLR § 7511(c)(3) allows modification if "the award is imperfect as a matter of form, not affecting the merits of the controversy." This provision is not preempted by any provision of the FAA. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175–76 (2d Cir.1984), cited by PVP, does not stand for the proposition that the FAA preempts the CPLR. *Florasynth* is directed to the direct conflict between an FAA limitation and state law. Here, the CPLR provision merely supplements the FAA.[2]

PVP contends that the "modification" of the December Award was rendered on impermissible grounds, i.e. the basis of new evidence constituting the statement of QVC as asserted in the Briggs Letter that QVC intended to breach the QVC Agreement. This letter was originally offered but not admitted. PVP asserts that it amounts to new evidence. The Arbitrator thus suppos-

---

**2.** PVP's present claims that an arbitrator is precluded from modifying his own award is at variance with an earlier position. On January 15, 1993, PVP requested "as modification of the [December] Award certain clarifications necessitated by SLC's conduct since the award was entered." (Ex. I to SLC's Motion to Confirm). PVP's current stance that no such modification is permit-

ted and that new evidence is inadmissible constitutes substantial departures from its earlier position. SLC's contention that PVP's earlier stance bars PVP's current argument on these issues need not be addressed by this court, however, since there are substantial other grounds for finding on SLC's behalf on the instant motions.

edly had no authority to modify the December Award on the basis of new evidence, even under the more liberal New York laws, CPLR § 7511.

However, the so-called "new" evidence, the Briggs Letter, was not new but had been previously placed before the Arbitrator. In any event, the cases cited by PVP, such as *Levine v. Klein*, 70 A.D.2d 532, 416 N.Y.S.2d 28 (1 Dept.1979), concern only the prohibition against a court considering new evidence that did not come before the arbitrator, not an arbitrator's ability to consider new evidence in modifying her own award.[3]

The reasons for this reluctance on the part of courts are clear. The policy underlying judicial deference to an arbitrator's decision is the strong preference that such awards be final determinations of the parties' conflict. This concern for finality is not present when it is the arbitrator who considers the evidence, especially in a case such as the one at bar where the arbitrator specifically retained jurisdiction to enforce certain provisions of the Award.

The February Award, just like the December Award, confirmed the obligations of PVP and Lucci to honor their agreement with SLC to market products endorsed by Lucci on direct marketing cable stations. Given the refusal of QVC to allow Lucci to endorse products on its station, in order to effectuate this relief the arbitrator modified the form of the relief and ordered that the obligations between the parties be satisfied on other direct marketing cable stations.

*Arbitrator Retained Jurisdiction to Enforce Paragraph Four.*

■ Even assuming, arguendo, that the issuance of the February Award amounted to a substantive and not merely a formal modification of the December Award, the court would still find for SLC and confirm both Awards. Paragraph 8 of the December Award, in which the Arbitrator retained jurisdiction with respect to issues arising under Paragraph 4, formed the basis for the Arbitrator to issue the February Award. Under Paragraph 8 "[t]he arbitrator [retained] jurisdiction with respect to *any* issues that arise out of Paragraph # 4 above of this award." (December Award, Ex. F to SLC's Motion to Confirm (emphasis added)).

Under applicable law the arbitrator properly retained jurisdiction and modified the December Award. The December Award specifically provided SLC with damages and injunctive relief if PVP and Lucci do not satisfy their obligations to SLC by performing on direct marketing cable stations with regard to skin and hair care products. The February Award merely took into account QVC's refusal to allow the agreement between PVP and SLC to be performed on QVC.

■ Because the arbitrator retained jurisdiction to enforce ¶ 4 of the December Award, he had the authority to issue the February Award. Courts recognize the authority of the arbitrator to retain jurisdiction to deal with problems arising out of the rendering of an award. *Kerr–McGee Refining Corp. v. M/T Triumph*, 924 F.2d 467 (2d Cir.), cert. den., —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991); *New York Bus Tours, Inc. v. Kheel*, 864 F.2d 9 (2d Cir.1988). Such jurisdictional retention does not destroy either the definitiveness or finality of an award so as to permit a court to vacate it. *Meisels v. Uhr*, 79 N.Y.2d 526, 583 N.Y.S.2d 951, 955, 593 N.E.2d 1359, 1363 (1992).

*February Award was Necessary Given the Circumstances*

The modification does not determine QVC's rights but, instead, was but a response to QVC's actions in determining how the relief granted to SLC in the December Award can be realized. QVC's rights are unaffected.

The Briggs letter in essence amounted to an anticipatory repudiation of important aspects of the QVC Agreement by QVC. The hope of the Arbitrator obviously was to induce QVC to continue having Lucci promote products on its programs by ordering PVP

---

3. PVP also cites the Practice Commentaries to CPLR § 7511, specifically C7511:2. This section is irrelevant, since it too concerns the presentation of new evidence to a judge in a motion to vacate an arbitrator's award.

and SLC to apprise QVC that arbitration had resolved their dispute. In order to insure that in any event PVP would honor its obligations to SLC, the Arbitrator also retained jurisdiction to enforce that obligation should difficulties occur. It is clear that the intent of the Arbitrator was that PVP and Lucci market SLC's goods on cable marketing channels. The hope was that this performance would occur on QVC.

When that hope proved nugatory and performance by PVP on QVC proved impossible because of QVC's actions, the Arbitrator utilized his retained jurisdiction and sought other avenues for assuring PVP's performance for SLC.

All that was done was to enforce the thrust of Paragraph 4, i.e. that PVP was to honor its obligations to SLC. The form of honoring this obligation could be changed.

This modification was not directed to the substance of the December Award but only affected the method of achieving the relief previously granted in the December Award, i.e. that SLC is entitled to PVP's performance. The February Award embodies the recognition that QVC may prevent PVP's performance as contemplated under the December Award, and therefore there had to be a change in the form of the award. The method by which PVP would satisfy its obligations to SLC had to be altered in light of QVC's abrogation. The merits of the controversy—what relief is owed SLC by PVP—remain unchanged.

Here, the Arbitrator ruled that PVP and Lucci must perform. This became impossible due to QVC's actions. The February Award then orders performance to still take place but on a different channel if QVC does not agree to televise Lucci's endorsements. The Arbitrator ordered the parties to notify QVC that their dispute had been resolved, with the hope that this would induce QVC to continue televising Lucci's endorsements. If not, then the performance was still to take place but on another channel.

Both judgments of the Arbitrator were final and definite given the circumstances then in effect and were binding upon the parties. There is no ambiguity in the February Award which would justify this court's modification of the Award under either CPLR § 7511(b)(1)(iii) or 9 U.S.C. § 10(a)(4).

*PVP's Assertion that February Award is Impossible to Obey Is In Error.*

PVC argues that the February Award is impossible to obey since under ¶ 13(B) of the QVC Agreement, which the Arbitrator ruled to be binding on the parties, SLC and Lucci may not market products covered by the QVC agreement on other direct marketing stations during the term of the QVC Agreement and for two years thereafter. (PVP's Motion to Vacate, 18).

PVP's contentions that the February Award is contradictory because the QVC Agreement forbids SLC and PVP from performing on a competing direct marketing station is wrong. The QVC Agreement's exclusivity provisions only applied if SLC or Lucci was in breach. Since it is instead QVC which abrogated the Agreement, the exclusivity provisions do not apply.

Paragraph 13(b) states, in relevant part: "For a period of two (2) years . . . from the date of termination or expiration of this Agreement as a result of the breach of this Agreement by SLC and/or Lucci, whichever is earlier, Lucci and SLC, and each of them, shall not market, promote, distribute, offer for sale and/or sell Products by television, telemarketing, or direct marketing, or cause, license or permit any third party to do the foregoing." In the Briggs Letter QVC notified SLC that QVC had "no present intention to promote the Sale of Susan Lucci Professional Hair Care Products."

Clearly, it was QVC that terminated the televised promotion of goods by Lucci. The clear language of Paragraph 13(b) indicates that it applies only where breach is by Lucci or SLC, not by QVC. Therefore, there is no inconsistency in ordering PVP to perform on another direct marketing cable television station. Since QVC has by its statements prevented the appearance of Lucci on its station, it would have no standing to object to PVP honoring is obligation to SLC on another channel.

*Conclusion*

The Arbitrator considered and determined the issues underlying the Agreement between PVP and SLC. This decision must be honored by this court because there is no evidence that the Arbitrator exceeded his powers or in any way improperly decided the conflict before him. The December Award, as modified by the February Award, is confirmed. PVP is to honor its obligations to SLC under Draft #6. If that obligation cannot be honored on QVC, then it is to be carried out on another direct marketing cable television station.