David **SPECTOR** and Specurity Industrial Ltd., Petitioners,

v.

Dov **TORENBERG**, Ximena Florez, Nicolas Fucci, TRS Computers, Ltd., and Microguard, Inc., Respondents.

No. 93 Civ. 5865 (PKL).

United States District Court, S.D. New York.

May 5, 1994.

Vlock & Brown, New York City (Steven Vlock, of counsel), for petitioners.

Bryan, Levitin & Babb, New York City (T. James Bryan, of counsel), for respondents Torenberg, Florez, and Microguard, Inc.

Hollyer, Brady, Smith, Troxell, Barrett, Rockett, Hines & Mone, New York City (Christopher Brady, of counsel), for respondents Fucci and TRS Computers, Ltd.

## OPINION AND ORDER

LEISURE, District Judge:

■ David Spector and Specurity Industrial Ltd. petition this Court pursuant to 9 U.S.C. §§ 10–11 to vacate or modify an award rendered by a three-member commercial arbitration tribunal appointed by the American Arbitration Association.[1] Respondents cross-petition pursuant to 9 U.S.C. § 207 to enforce the award. For the following reasons, the Court denies the petition to vacate or modify the award, and grants the cross-petition to confirm the award in its entirety. The Court denies respondents' request for attorney's fees in bringing their petition.[2]

## BACKGROUND

On January 19, 1989, David Spector, the president of Specurity Industrial Ltd. ("Specurity"), an Israeli corporation, entered into a shareholders agreement (the "Shareholders Agreement") with respondents Dov Torenberg, an American citizen, Ximena Florez, a resident American alien, Nicolas Fucci, an American citizen, and TRS Computers, Ltd., a New York corporation. The Shareholders Agreement provided for the distribution of one-third of the shares of stock of Microguard, Inc. ("Microguard"), a New York corporation, to each of the following: (1) Spector

and his wife; (2) Torenberg and Florez, and (3) Fucci and TRS.

Microguard was created for the purpose of importing and marketing PC–Guard, a device manufactured by Specurity which is designed to protect the security of personal computers. Accordingly, on January 30, 1989, Specurity entered into an exclusive distribution agreement (the "Distribution Agreement") with Microguard, which established minimum annual purchases of PC–Guard over a four year period. Both the Shareholders Agreement and the Distribution Agreement contain arbitration clauses and choice of law clauses specifying New York law.

Specurity made its first shipment of PC–Guard on July 27, 1989. Microguard made a 25% downpayment but failed to pay the balance. On January 9, 1990, Torenberg wrote Spector a letter indicating that Microguard would not fulfill the remaining terms of the contract. Then, on March 19, 1990, Microguard, Torenberg and Florez made a demand for arbitration proceedings claiming that Spector had "made false statements … about the performance and success" of PC–Guard, which was in fact "defective and unmerchantable." Affidavit of Christopher Brady, sworn to on December 7, 1993 ("Brady Affidavit"), Exhibit A at 1–2. They further asserted that in reliance upon these representations, they had contributed money, time, and energy to founding and running Microguard, and had entered into both the Distribution and Shareholders Agreements. *Id.* Respondents sought the following relief: (1) recision of both agreements; (2) restitution of monies paid to Spector and Specurity; (3) compensatory damages; and (4) a declaratory judgment that termination of the Distribution Agreement was Specurity's sole

---

1. Arbitration Case No. 13–T–168–00504–90. The panel was composed of three New York lawyers: Lawrence Weiss, Esq., Jeremy Sussman, Esq., and Kenneth Schacter, Esq.

2. Respondents have also requested that the Court order the posting of security pursuant to Article VI of the Convention. This request, which is now moot, was in any event premised on a misunderstanding of Article VI of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Article VI applies when a court

is asked to enforce an award while there is pending another action to vacate the award in the country in which the award was rendered. In these circumstances, the enforcing court may condition a stay of the enforcement action upon the posting of security by the party seeking to vacate the award. *See Spier v. Calzaturificio Tecnica S.P.A.,* 663 F.Supp. 871, 874–75 (S.D.N.Y.1987). Plainly, Article VI does not apply to the circumstances of this suit.

remedy for Microguard's alleged failure to purchase further units of PC–Guard as set forth in the Distribution Agreement. On May 11, 1990, Spector and Specurity filed a counter-demand for Arbitration, alleging breach of contract, and seeking damages, declaratory relief, specific relief and reasonable attorney's fees.

Arbitration took place in the Southern District of New York over a period of three years. By a partial final award signed on May 20, 21, and 28, 1993 (the "May Award"), the arbitrators (1) found Spector and Specurity jointly and severally liable in the amount of $25,772.00 plus interest to Microguard, (2) found Spector and Specurity jointly and severally liable in the amount of $34,205.00 plus interest and $21,650 in arbitral costs to Microguard, Torenberg and Florez, and (3) dismissed petitioners' claim with prejudice. By an award signed August 9 and 16, 1993 (the "August Award"), the arbitrators found Spector and Specurity jointly and severally liable for the attorney's fees of Microguard, Torenberg, and Florez in the amount of $5,000.00, and of Fucci and TRS in the amount of $33,092.50.

Four days later, on August 20, 1993, Spector and Specurity brought the instant petition to vacate or modify the August Award, contending that the arbitrators had no authority to award attorney's fees and that the award was the result of evident partiality and misconduct by the arbitrators. Petitioners also claimed the award was irrational and contradictory because it awarded damages to Microguard, which either no longer existed or, if it did exist, was not wholly owned by Spector because Florez and Torenberg had ceded their interest in Microguard to him in a letter dated January 9, 1990.

On September 2, 1993, respondents Torenberg and Florez wrote to the arbitration panel requesting a modification of the August Award to address petitioners' claim that the award was irrational because damages were awarded in part to Microguard. The arbitrators responded by issuing a modification, dated October 14, 19, and 20, 1993 (the "October

Award"). In it, Spector and Specurity were directed to pay Torenberg and Florez the amounts previously awarded Microguard.

## DISCUSSION

### I. STANDARD OF REVIEW

■ An arbitral award may be enforced under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") if it was "pronounced in accordance with foreign law or involv[es] parties domiciled or having their principal place of business outside the enforcing jurisdiction." *Bergesen v. Joseph Muller Corp.,* 710 F.2d 928, 932 (2d Cir.1983).[3] An award fitting this description is enforceable under the Convention even if it is also enforceable under the Federal Arbitration Act (the "FAA"). *See Id.* This "overlapping coverage" provides a party with a choice of methods by which to enforce an award in its favor, a choice that in *Bergesen* permitted the party seeking enforcement to benefit from the longer statute of limitations applicable to enforcement actions under the Convention. *Id.*

■ In the instant case, respondents have exercised their right to seek confirmation of their award under the Convention pursuant to 9 U.S.C. § 207 since the award involves foreign parties. Respondents mistakenly contend, however, that petitioners are therefore foreclosed from seeking to vacate the award under the FAA. Section 10 of the FAA provides that "[t]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10. This provision clearly vests the Court with the authority to vacate the award at issue herein. The question, then, is whether the Convention negates this authority, which it does not.

The Convention provides that the enforcement of an award may be refused when "the award ... has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award

**3.** Such an award is one "not considered as domestic" within the meaning of Article I of the Convention. *Id.* at 932 n. 2.

was made." *See* Convention, Art. V(1)(e). Since the award at issue in this case was made in the United States, this Court is plainly a competent authority within the meaning of Article V(1)(e). *See generally International Standard Elec. Corp. v. Bridas Sociedad Anonima,* 745 F.Supp. 172, 178 (S.D.N.Y.1990) (holding that only a court of the country in which the award was made may vacate the award). Accordingly, rather than foreclosing this Court from vacating the award, the Convention explicitly acknowledges the authority of this Court to do so.[4]

The bases upon which an award may be vacated under the FAA are set forth in Section 10 thereof as follows:

> (a) Where the award was procured by corruption, fraud, or undue means.
>
> (b) Where there was evident partiality or corruption in the arbitrators, or either of them.
>
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
>
> (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

In addition to these statutory grounds, it is well settled that a court may vacate an award when the arbitrators manifestly disregarded the law in reaching their decision. *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111–12 (2d Cir.1993). Manifest disregard will be found where an "arbitrator 'understood and correctly stated the law but proceeded to ignore it,'" *Siegel v. Titan Industrial Corp.,* 779 F.2d 891, 893 (2d Cir. 1985) (citation omitted), or where "error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933–34 (2d Cir.1986).

■ A party moving to vacate an arbitration award has the burden of proof, *see Barbier v. Shearson Lehman Hutton, Inc.,* 752 F.Supp. 151, 159 (S.D.N.Y.1990), *aff'd in part and rev'd in part,* 948 F.2d 117 (2d Cir.1991), and the showing required to avoid confirmation is very high, *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir.1987). This limited judicial review reflects the desire to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways,* 989 F.2d at 111. As the Court of Appeals for the Second Circuit has observed, "[a]rbitration cannot achieve the savings in time and money for which it is justly renowned if it becomes merely the first step in lengthy litigation." *National Bulk Carriers, Inc. v. Princess Management Co.,* 597 F.2d 819, 825 (2d Cir.1979).

## II. AUTHORITY OF THE ARBITRATORS TO ISSUE THE OCTOBER AWARD

■ As discussed above, petitioners brought their petition to vacate prior to the issuance of the October Award. If the October Award was validly issued, it renders moot petitioners' arguments concerning the irrationality of awarding damages to Microguard. Petitioners contend, however, that once the arbitrators issued the August Award, they became *functus officio* and therefore did not have the power to modify their award. *See A/S Siljestad v. Hideca Trading, Inc.,* 541 F.Supp. 58, 60 (S.D.N.Y. 1981), *aff'd,* 678 F.2d 391 (2d Cir.1982).

Since the arbitration took place in New York, the authority of the arbitrators to modify their award is governed by New York Civil Practice Law and Rules ("CPLR")

---

**4.** It may also be observed that 9 U.S.C. § 207 does not restrict this Court's authority for it does no more than reaffirm the principles of the Convention. 9 U.S.C. § 207 provides that the Court shall "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." Since the Convention permits the Court to refuse enforcement of an award that the Court has vacated, the Court may therefore deny confirmation of the award under 9 U.S.C. § 207 upon this basis.

§ 7509, which is not preempted by the FAA. *Pine Valley Prods. v. S.L. Collections,* 828 F.Supp. 245, 248 (S.D.N.Y.1993). Pursuant to CPLR § 7509, a party may request the modification of a final award within twenty days of the receipt thereof. The opposing party has ten days within which to file objections. Unless the parties agree otherwise, the arbitrators then have thirty days to act upon the request, measured from the earlier of the filing of objections or the expiration of the ten day period for filing objections. In the instant case, the October Award was untimely within the meaning of CPLR § 7509 by the matter of a few days.[5]

The untimeliness of the October Award under CPLR § 7509, however, does not necessarily foreclose the Court from recognizing this award. Pursuant to Section 10 of the Federal Arbitration Act, when a court vacates an award it may order a rehearing by the arbitrators. *See* 9 U.S.C. § 10(e). Thus, accepting petitioners' argument that the August Award should be vacated, the Court could remand this matter to the arbitrators for a rehearing to correct their error pursuant to 9 U.S.C. § 10(e), whereupon the arbitrators would have the authority to issue the October Award. The question, then, is whether this Court may now recognize the October Award or must await the reissuance of that award subsequent to a remand by this Court.

■ The Court begins with two general observations. The first of these is that the judicial system must support arbitration's goal of achieving the swift and inexpensive resolution of disputes, a goal which is undermined when courts unnecessarily remand arbitral awards. *Fischer v. CGA Computer Assocs, Inc.,* 612 F.Supp. 1038, 1041 (S.D.N.Y.1985); *see generally National Bulk Carriers, Inc. v. Princess Management Co.,* 597 F.2d 819, 825 (2d Cir.1979). The second observation is that the interface between the arbitral process and the judicial process is often complex and the law of New York governing arbitrations has therefore been in-terpreted flexibly to rationalize this interaction between arbitrators and courts. For example, CPLR § 7510, which requires a party to bring any motion to confirm an award within one year "after its delivery to him," makes no provision for an extension of time when an application has been made to the arbitrators pursuant to § 7509 to modify the award. Nonetheless, it has been held that when such application is made and subsequently denied, the one year period begins running from the date the application for modification is denied. *Belli v. Matthew Bender & Co.,* 24 A.D.2d 72, 263 N.Y.S.2d 846 (2d Dep't 1965). In addition, New York law makes no explicit provision for the circumstance in which a motion is made to a court pursuant to CPLR § 7511 to vacate or modify an award while there is still pending an application to the arbitrators pursuant to CPLR § 7509 to modify the award. Nonetheless, it is clear that a court may await the disposition of the arbitrators on the application to modify the award. McLaughlin, Practice Commentaries, McKinney's Consol. Laws of New York, Book 7B, CPLR 7509:1, at 554.

This Court believes a rigid refusal to recognize the October Award would be contrary to both the demonstrable flexibility of New York law in this area and the judicial interest in promoting the arbitral goals of efficiency and parsimony. For the Court to direct a rehearing by the arbitrators would impose not only the delay and cost of further arbitral proceedings, but also that of an additional round of proceedings before this Court to confirm the resulting award. Moreover, since the arbitrators have already indicated the result they will reach, such a rehearing would merely serve to exalt form over substance at the cost of needless expense and delay.

Accordingly, the Court holds it may confirm a modified award, though its modifica-

---

5. The request for modification was dated September 2, 1993. The time for objections therefore ran on September 13, 1993 (the Monday following September 12, 1993). The October Award was dated October 14 and October 19. If the date of the October Award is deemed the date of the last arbitrator's signature, as the Court believes it should be, then it was six days late. If measured by the date of the first signature, it was one day late.

tion was untimely under CPLR § 7509, when, as in the instant case, (1) one party has brought an action to vacate the award, (2) the second party requests that the arbitrators modify the award so as to correct an error identified by the first party in the motion to vacate, and (3) the arbitrators modify the award to correct the error. The power to recognize an award in these circumstances is implicit in the authority of this Court to direct a rehearing by the arbitrators pursuant to 9 U.S.C. § 10(e). In addition, it is implicit in this Court's authority under 9 U.S.C. § 11 to "modify and correct the award, so as to effect the intent thereof and promote justice between the parties." Since the arbitrators' modification in October clearly indicated their intent with respect to the August Award, the Court may properly modify the August Award in accordance with the October Award. *See generally Fischer v. CGA Computer Associates, Inc.*, 612 F.Supp. 1038, 1041 (S.D.N.Y.1985) ("Remand should not be granted where the court can resolve any alleged ambiguities in the award by modification, pursuant to 9 U.S.C. § 11.")

Finally, the exercise of this authority is consistent with New York law. New York courts, like federal courts, may order a rehearing by the arbitrators when they have vacated an arbitral award. *See* CPLR § 7511(d). In addition, courts may modify an award "imperfect in a matter of form, not affecting the merits of the controversy." CPLR § 7511(c)(3). Under this provision a New York court may modify an award so as to give effect to the intent of the arbitrators. *Cf.* McLaughlin, Practice Commentaries, McKinney's Consol. Laws of New York, Book 7B, CPLR 7509:1, at 554 (noting that § 7509, permitting modifications on the grounds specified in § 7511(c), allows arbitrators to clarify their intent).

Accordingly, the Court holds that the October Award may be recognized pursuant to 9 U.S.C. § 10(e) and 9 U.S.C. § 11 as a valid clarification of the arbitration panel's intent. The Court will therefore turn to petitioners' arguments that have not been rendered moot by the issuance of the October Award.

### III. WHETHER THE AWARD WAS RENDERED IN MANIFEST DISREGARD OF THE LAW

■ Petitioners contend that the arbitrators imposed joint and several liability on Spector and Specurity in manifest disregard of the law. The arbitrators did not issue a reasoned decision. However, "it is axiomatic that arbitrators need not disclose the rationale for their award." *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991). Accordingly, "[i]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Id.* (quoting *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir.1972)). The Court finds that such a basis exists here.

The arbitrators were presented with testimony that Spector made untrue statements with regard to PC–Guard. This testimony provided a basis for finding that Spector had fraudulently induced respondents to enter into both the Shareholders Agreement and the Distribution Agreement. With respect to the Shareholders Agreement, Spector, acting in his individual capacity, caused losses to Torenberg and Florez who were required under this agreement to provide "all the financial resources necessary for the operation of Microguard" and to "dedicate most of their time and efforts to" Microguard. Affidavit of T. James Bryan, sworn to on December 7, 1993, Exhibit A at 7. With respect to the Distribution Agreement, Spector acted as the representative of Specurity. Specurity could therefore be found liable under a theory of respondeat superior. Thus, the fact that Spector made misrepresentations in both a personal capacity and as a representative of Specurity provided a basis for the arbitrators to find both him and his company jointly and severally liable for the resulting losses. *See Slotkin v. Citizens Cas. Co.*, 447 F.Supp. 253, 257 (S.D.N.Y.1978), *aff'd in part and rev'd in part*, 614 F.2d 301 (2d Cir.), *cert. denied*, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980) ("[S]eparate wrongs resulting in a single, indivisible injury, as here, create joint and several liability for the whole harm.") (citing *Hill v. Edmonds*, 26 A.D.2d

554, 270 N.Y.S.2d 1020 (1966)). The arbitrators may also have found that Spector's domination of Specurity provided a basis for piercing the corporate veil. *See William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir.1989). Accordingly, the Court finds that an adequate basis for the award may be inferred from the facts of this case and that there is therefore no indication of manifest disregard of the law.

## IV. EVIDENT PARTIALITY AND MISCONDUCT

Petitioners' third basis for seeking vacatur of the award is that the award was a product of "evident partiality" and "misconduct" within the meaning of 9 U.S.C. § 10(b) and (c).

In general, courts have been reluctant to set aside awards based on a claim of evident partiality. *Jardine Matheson & Co. v. Saita Shipping, Ltd.*, 712 F.Supp. 423, 426 (S.D.N.Y.1989). An award should only be set aside on this basis when "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir.1984).

█ Petitioners claim that the partiality of one of the arbitrators, Lawrence N. Weiss, was demonstrated by his conduct during the arbitration proceedings. Petitioners contend that early in the proceedings, Mr. Weiss discussed the authority of the panel to impose sanctions on petitioners for frivolous litigation, thus suggesting that he had prejudged the case. In addition, petitioners contend that Mr. Weiss allegedly coached respondents' witnesses. Finally, petitioners contend that a comment by Mr. Weiss during the hearings suggests he had an anti-Israeli bias that worked to the disadvantage of

Spector, who is Israeli. In substance, Mr. Weiss allegedly commented that Israel's policy of preventing money from leaving the country to go the United States was ridiculous in light of the United States' financial support of Israel.[6]

█ Considering these allegations in their entirety, the Court finds no evident partiality. With respect to Mr. Weiss's comments on sanctions, an arbitrator is not precluded from developing views regarding the merits of a dispute early in the proceedings, and an award will not be vacated because he expresses those views. *See Ballantine Books, Inc. v. Capital Distributing Co.*, 302 F.2d 17, 21 (2d Cir.1962). In addition, what petitioners characterize as the coaching of witnesses, this Court views as in keeping with the relative informality of arbitral proceedings.[7] *See generally id.* Finally, with respect to Mr. Weiss's alleged anti-Israeli comment, respondents note that Torenberg also has Israeli connections, as he was born in Israel, served in the Israeli army, and worked for the Israeli airline. Even were this not true, Mr. Weiss's comments do not suggest a degree of animus sufficient to call his objectivity into question.

█ Petitioners also contend that Mr. Weiss engaged in misconduct by having an *ex parte* communication with Torenberg. This conversation, of which petitioners caught the tail-end, took place during a break in the hearings with a stenographer present[8] and concerned a computer problem that Mr. Weiss had once had. In order to vacate an award based on an *ex parte* conversation, a party must show that this conversation deprived him of a fair hearing and influenced the outcome of the arbitration. *M & A Elec. Power Coop. v. Local Union No. 702, Inter-*

---

**6.** No transcript of the hearings was made on the day Mr. Weiss made his comment, so the precise language of this comment is unavailable.

**7.** The following, for example is an exchange to which petitioners object:

Q. You don't know of any bugs in the DOS No. 4 and why the marketing of this DOS was stopped?

A. I have no personal knowledge on that.

Weiss: I don't know that the marketing of DOS 4 was stopped. The manufacturers never made

a serious attempt to market DOS 4.0 as a replacement for 3.3. Am I right about that, Mr. Torenberg?

A. That's right.

Affidavit of Michael A. Roth, sworn to on August 19, 1993, at ¶ 39.

**8.** Petitioners do not deny that the stenographer was present during the conversation. *See* Petitioners' Reply Memorandum at 11.

national *Brotherhood of Electrical Workers, AFL–CIO,* 977 F.2d 1235, 1237–38 (8th Cir. 1992). Generally, the subject matter of the conversation must have gone to the heart of the dispute's merits, and an award will therefore not be vacated if the conversation concerned a merely peripheral matter.[9] *Id.* at 1238; *see Metropolitan Property & Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co.,* 780 F.Supp. 885, 893 (D.Conn.1991) (enjoining the participation of arbitrator who had discussed merits of case before hearing). In the instant case, petitioners have failed to make a showing sufficient to vacate the award. The subject matter of the conversation between Mr. Weiss and Mr. Torenberg was not directly related to the merits of the dispute being arbitrated.[10] Moreover, the circumstances of their conversation do not evince any attempt at secrecy that might provoke deeper concerns regarding their purposes.

Accordingly, the Court does not find that there is a sufficient basis to vacate the award based on evident partiality or misconduct.

## V. AUTHORITY OF THE ARBITRATORS TO AWARD ATTORNEY'S FEES

■ Petitioners contend that the arbitrators had no authority to award attorney's fees. The arbitration took place in New York and therefore pursuant to New York's procedural rules governing arbitration. *Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 231 (2d Cir.1982). Under New York law, arbitrators may grant attorney's fees if the parties' agreement to arbitrate so provides. *See* CPLR § 7513.[11] Parties may also acquiesce in the awarding of such fees by their conduct at the arbitration. *See Synergy Gas Co. v. Sasso,* 853 F.2d 59, 64 (2d Cir.), *cert. denied,* 488 U.S. 994, 109 S.Ct.

559, 102 L.Ed.2d 585 (1988); *see generally Kamakazi,* 684 F.2d at 231 ("It is hornbook law that parties by their conduct may agree to send issues outside an arbitration clause to arbitration.")

■ In the instant case, petitioners agreed to the award of such fees by placing a request for "reasonable attorney's fees" in their demand for arbitration. *See* Brady Affidavit, Exhibit B at 11. Petitioners also acquiesced in the award of such fees by requesting attorney's fees in their post-hearing briefs, *see* Brady Affidavit, Exhibit I at ¶ 4, as well as by failing to object to such fees during the final arguments on April 15, 1993. At this hearing, Christopher Brady, attorney for Fucci and TRS, stated: "[T]he claimants asked for attorney's fees, the respondents asked for attorney's fees. They've asked for attorney's fees.... So they are agreeing and the claimants are agreeing and I sure agree for Nick Fucci that this panel has the authority to grant reasonable attorney's fees." Brady Affidavit, Exhibit C at 3391–3392. Shortly thereafter, T. James Bryan, attorney for Torenberg, Florez and Microguard, stated that "we are seeking attorney's fees and the basis is that all the parties have agreed, forget law. The law is that if the parties agree to allow you to award attorney's fees they can do that and they have done that and that's that." *Id.* at 3393. Petitioners did not object to this suggestion that they had agreed to the award of attorney's fees. Rather, petitioners objected to the award of attorney's fees only after the arbitrators had rendered the May Award, at which point it was clear that any attorney's fees to be awarded would be awarded to respondents.

Petitioners argue that they were initially under the mistaken belief that attorney's fees

9. The Court recognizes, however, that the burden may shift to the party seeking confirmation to demonstrate the absence of prejudice if the party seeking vacatur makes a preliminary showing that the *ex parte* contacts were carried out in secretive or conspiratorial manner.

10. Thus, this case is distinguishable from *Goldfinger v. Lisker,* 68 N.Y.2d 225, 508 N.Y.S.2d 159, 500 N.E.2d 857 (1986), cited by petitioners. In that case, the arbitrators's communication "was deliberate in nature and designed clearly to en-

able [the arbitrator] to resolve in his own mind any doubt he may have had as to [the witness's] credibility or the validity of the claim itself." *Id.,* 68 N.Y.2d at 234, 508 N.Y.S.2d at 163, 500 N.E.2d at 861.

11. "Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including attorney's fees, incurred in the conduct of the arbitration, shall be paid as provided in the award." C.P.L.R. § 7513.

could be awarded because Article 32 of the American Arbitration Association International Rules of Arbitration applied. However, regardless of the reason for petitioners' position, it was one that might have inured to petitioners' benefit had they prevailed, and from which petitioner may therefore not equitably be permitted to withdraw. Accordingly, the Court finds that the arbitrators acted within their authority in awarding attorney's fees.

## VI. RESPONDENTS' MOTIONS

Respondents seek confirmation of the award, which the Court hereby grants, having found no basis for refusing confirmation. In addition, respondents Fucci and TRS seek Rule 11 sanctions and attorney's fees incurred in enforcing the award.

■ The goal of Rule 11 is to "discourag[e] dilatory and abusive litigation tactics and eliminat[e] frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process." *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21 (2d Cir.1990). Yet, as long as an attorney's "pleadings meet the test of reasonableness and are not interposed for ... improper purposes ... sanctions are not warranted." *Id.* at 22. "Thus, not all unsuccessful legal arguments are frivolous or warrant sanction." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991). Having reviewed the arguments raised by the petitioners, this Court concludes that the imposition of Rule 11 sanctions is not merited. While petitioners' motion to vacate was denied by the Court, it did not rise to the level of frivolousness that would make the imposition of sanctions appropriate.

■ Respondents also contend that they are entitled to attorney's fees based upon the parties' agreement that such fees would be awarded. That agreement related specifically, however, to fees incurred in proceedings before the arbitrators and not in proceedings to enforce the resulting award. Accordingly, the Court does not find a basis for awarding attorney's fees incurred in these enforcement proceedings.

## CONCLUSION

For the reasons stated above, the Court hereby denies the petition to vacate or modify the arbitration award and grants the petition to confirm the award. Respondents' motion for attorney's fees incurred in this enforcement action is denied. Respondents are directed to prepare and submit a form of judgment consistent with this Order, to be entered by this Court, no later than June 3, 1994.

## SO ORDERED.